Matthew J. SMITH

v.

The RETIREMENT BOARD OF the EM-
PLOYEES' RETIREMENT SYSTEM
OF the STATE OF RHODE ISLAND,
the Department of Administration, and
Bruce Sundlun, as Governor of the State
of Rhode Island.

No. 93–695–M.P.

Supreme Court of Rhode Island.

March 24, 1995.

John D. Lynch and Robert Friel, Warwick,
for plaintiff.

Jeffrey Pine, Atty. Gen., Thomas Palombo,
and Suzanne Worrell Gemma, Sp. Asst. Atty.
Gen., for defendants.

OPINION

LEDERBERG, Justice.

This matter came before the Supreme
Court on the petition for certiorari of the
Department of Administration and Bruce
Sundlun, as Governor of the State of Rhode
Island (defendants). The Retirement Board
of the Employees' Retirement System of the
State of Rhode Island (Board) and the defen-
dants sought to suspend pension payments to
the plaintiff, Matthew J. Smith, because of
his alleged failure to render "honorable ser-

vice" while a public employee.[1] The plaintiff contended that the Public Employee Pension Revocation and Reduction Act provided no grounds for withholding his pension payments. The Superior Court denied the Board's and the defendants' motions to stay and to vacate the order that directed the Board and the defendants to pay all pension benefits owed to the plaintiff and to deliver to the plaintiff all future pension checks. For the reasons stated below, we deny the petition without prejudice.

## FACTS AND PROCEDURAL HISTORY

In August 1993, plaintiff, a former employee of the State of Rhode Island and a member of the State Employees' Retirement System, resigned (according to the state) or retired (according to plaintiff) from his office as Administrator and Clerk of the Supreme Court of Rhode Island and applied to the Board for pension benefits. Because the Board apparently had not responded to his application by early October, plaintiff, through his attorney, requested that his application be heard at the Board's regular meeting scheduled for October 21, 1993.

On October 6, 1993, the chairperson of the Board filed a complaint with the State Ethics Commission, alleging that plaintiff had violated the Conflict of Interest statute in effect while plaintiff was an elected member of the General Assembly, serving as Speaker of the House of Representatives. Specifically, the complaint alleged that in 1981 plaintiff voted in favor of legislation entitled "Credit For Teaching In Private Schools—Contributions," an act that "benefited him [Smith] to a greater extent than it did the group at which it was directed: state employees" and thereby violated the provisions of the conflict-of-interest statute, G.L.1956 chapter 14 of title 36, as enacted by P.L.1976, ch. 93, § 1.[2] The 1981 retirement-credit legislation permitted any state employee who had served "as a teacher in any private school or institution * * * except such schools or institutions as are operated for profit" to add up to five years of such service as a teacher to an employee's total creditable service toward state retirement benefits, provided the employee paid a lump-sum contribution equal to the actuarial value of such credit, P.L.1981, ch. 179, § 1. Pursuant to the retirement-credit act, plaintiff, in 1984, purchased credit for four and one-half years, a portion of the time that he was employed at Providence College, a private, nonprofit institution of higher education.

On the same day that the ethics complaint was filed, the executive director of the Board informed plaintiff that, pending the resolution of the ethics complaint, the four and one-half years of credit that plaintiff purchased would "not be credited towards [his] service retirement," and that, therefore, plaintiff was precluded from receiving "a service retirement allowance at this time." In addition, plaintiff was notified that "[i]n accordance with * * * the Rules and Regulations of the Employees Retirement System of Rhode Island," he could "seek an appeal and hearing before the Retirement Board * * * within 20 days."

On October 7, 1993, plaintiff responded by filing a complaint against the Board and by moving in Superior Court for the issuance of a writ of mandamus to compel the Board to pay plaintiff "all pension benefits, currently due to him * * * as well as all future monthly pension benefits as such become due." The Board objected to plaintiff's motion and pointed out that because plaintiff had failed to exhaust his administrative remedies, his request for mandamus was untimely, lacked ripeness, and should not be heard by the court. At a record conference before the Superior Court on October 14, 1993, the parties reached an agreement that permitted plaintiff's attorney to address the Board at its meeting on October 21, 1993, at which time the Board would determine whether to grant plaintiff a hearing. At the October 21

1. The Board was the defendant in the original complaint filed by the plaintiff on October 7, 1993. On December 16, 1993, the Department of Administration and Bruce Sundlun, as Governor, moved to intervene. See infra. The Board is not, however, a party to this petition.

2. General Laws 1956 chapter 14 of title 36, as enacted by P.L.1976, ch. 93, § 1, was repealed in 1987 (P.L.1987, ch. 195, § 1, effective June 25, 1987) and was superseded by the Code of Ethics, G.L.1956 chapter 14 of title 36, as enacted by P.L.1987, ch. 195, § 3 (effective June 25, 1987).

meeting, the Board agreed to hear plaintiff's application on November 10, 1993. On October 27, the Board moved to dismiss the complaint filed by plaintiff against the Board pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, arguing that plaintiff had failed to "state a claim upon which relief can be granted." The parties later agreed to continue the hearing on this motion, pending this court's review.

At its November 10, 1993 hearing, the Board voted to award retirement benefits to plaintiff, but despite its vote, the Board continued to withhold all retirement benefits from plaintiff. As a result, on December 13, 1993, the Superior Court ordered the Board to deliver to plaintiff "the retirement benefits due and owing * * * for the months of August, September, October, and November, 1993."

On December 13, 1993, the state filed a civil suit against plaintiff as a result of his expenditures from three Supreme Court accounts during the period plaintiff served as the Administrator and Clerk of the Supreme Court. This civil action was settled and dismissed in January 1994. On December 14, 1993, plaintiff was indicted by a statewide grand jury on one count of embezzlement or wrongful conversion by a public employee, two counts of filing a false document, one count of obtaining money under false pretenses, and two counts of conspiracy relating to his service as the Administrator and Clerk of the Supreme Court. Prior to trial, the Superior Court dismissed the embezzlement count. In August 1994, after a jury trial, plaintiff was found guilty of the misdemeanor charge of filing a false document and of the misdemeanor charge of conspiracy in filing the document. The trial justice granted plaintiff's motions for judgments of acquittal on the remaining charges. The state has appealed the pretrial dismissal of the embezzlement charge, and plaintiff has appealed the two misdemeanor convictions. Both appeals are pending before this court.

On December 16, 1993, the State of Rhode Island and its Governor, acting through its Department of Administration (DOA), moved to intervene on the ground that the Board could not "adequately represent the interests of the DOA and the interests of the DOA will be adversely affected if the pension funds * * * are released to the plaintiff." On the same day, defendants and the Board moved to stay and to vacate the Superior Court's December 13, 1993 order directing the Board to begin paying plaintiff. The defendants and the Board argued, *inter alia*, that "only the Department of Administration, [with its unique] power to issue a retirement check, can comply with that order. However, the Department of Administration was never named, joined or served by plaintiff in this action and * * * was not subject to the prior hearing."

The motions by defendants and by the Board were heard in the Superior Court on December 17, 1993. The plaintiff moved to adjudge various persons, including the Governor and the attorney for the DOA, in contempt of court for failure to comply with the December 13, 1993 order. At the hearing, counsel for the Board and for defendants handed to plaintiff a certified check representing his retirement benefits from August 11 through November 30, 1993. The Superior Court justice denied the motions of the Board and of defendants to stay and to vacate, denied plaintiff's motion to adjudge in contempt, and ordered that "[a]ll future pension checks * * * be delivered to Plaintiff in the normal course." Although the record is devoid of a ruling on defendants' motion to intervene, the motion was no doubt granted, given that counsel for both the Governor and the DOA presented arguments on the motions to stay and to vacate at the December 17, 1993 hearing.

Following the order, defendants immediately petitioned this court to review the decision of the Superior Court and filed a motion to stay the order. This court granted the petition for certiorari but denied the motion to stay.

On review of the petition before this court, defendants contended that the pension of a public employee may be suspended "for lack of honorable service prior to and without a criminal conviction" under this court's holding in *In re Almeida,* 611 A.2d 1375 (R.I. 1992). The plaintiff, on the other hand, argued that the Public Employee Pension Rev-

ocation and Reduction Act (PEPRRA), G.L. 1956 (1990 Reenactment) chapter 10.1 of title 36, as enacted by P.L.1992, ch. 306, art. 1, § 8 (effective January 1, 1993), is controlling. The PEPRRA was enacted approximately one month subsequent to the issuance of the *Almeida* opinion, and plaintiff contended that his situation does not fall within the circumstances that would trigger a reduction or a revocation of benefits under PEPRRA.

In *Almeida* this court upheld the termination of the pension benefits of a former justice of the Superior Court after the justice had failed to "respond to or contest" allegations of judicial misconduct made by the Commission on Judicial Tenure and Discipline (Commission); those "allegations were therefore admitted pursuant to § 8–16–4(c)." *Almeida*, 611 A.2d at 1378. The Commission further found that the justice had violated the Canons of Judicial Ethics, *id.* at 1379. In holding that "[h]onorable service is a necessary prerequisite * * * for the vesting of pension rights," *id.* at 1377, this court determined that the justice in *Almeida* had failed to meet the requisite "[h]onorable service" not because criminal charges pended against him but because he admitted to the acts of misconduct. *Id.* at 1379 n. 3.

The PEPRRA prescribes the circumstances in which retirement benefits "shall be revoked or reduced." Section 36–10.1–3(a). Specifically, PEPRRA provides, in pertinent part, that

"[The] retirement or other benefit * * * to which a public official or public employee is otherwise entitled * * * shall be revoked or reduced, in accordance with the provisions of this chapter, if * * * such public official or public employee is *convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment.*" (Emphasis added.) Section 36–10.1–3(a).

Section 36–10.1–2(a) further defines "crime related to public office or public employment" as "any of the following criminal offenses:

(1) The committing, aiding, or abetting of an *embezzlement* of public funds;

(2) The committing, aiding, or abetting of any *felonious theft* by a public officer or employee from his or her employer;

(3) *Bribery* in connection with employment of a public officer or employee; and

(4) The committing of any *felony* by a public officer or employee who, wilfully and with the intent to defraud, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position." (Emphases added.)

In addition to prescribing the circumstances in which retirement benefits may be revoked or reduced, PEPRRA delineates the procedures that the Board must follow in order to initiate a revocation or a reduction of "any retirement or other benefit" and also identifies the factors a court shall consider in deciding whether and in what amount benefits should be revoked or reduced. Section 36–10.1–3(b) and (c).

■ The issue before us is whether the Legislature intended that PEPRRA preempt *Almeida* as the basis for revocation or reduction of a public employee's retirement benefit. It is well established that the Legislature is "presumed to know the state of existing relevant law when it enacts or amends a statute." *Narragansett Food Services, Inc. v. Rhode Island Department of Labor*, 420 A.2d 805, 808 (R.I.1980); *see Bailey v. Huling*, 119 R.I. 250, 259, 377 A.2d 220, 224 (1977). In the instant case, our review of the legislative debate on PEPRRA disclosed that the *Almeida* opinion had been reviewed by members of the Legislature in consultation with the executive counsel to the Governor before the House and the Senate voted on the act. We therefore conclude that the Legislature took into account "existing relevant law," namely, the *Almeida* decision.

■ Moreover, the Legislature amended the bill during floor debate to add, *inter alia,* the word "felonious" in § 36–10.1–2, subsection (a)(2), such that the "committing, aiding, or abetting of any theft by a public officer or employee" was amended to read, the "com-

mitting, aiding, or abetting of any *felonious* theft by a public officer or employee." In addition, the bill as submitted referred to the "committing of any offense" but was amended to read, "the committing of any *felony.*" (Emphases added.) Section 36–10.1-2, subsection (a)(4). Therefore, we are constrained to conclude that the Legislature clearly intended that only a conviction or a plea of guilty or nolo contendere to one of the *felonies* enumerated in the statute would trigger the revocation or reduction of a public employee's retirement benefits.

Finally, in delineating the procedural requirements in § 36–10.1–3(b), the Legislature also amended the bill to substitute the word "shall" for "may" in the sentence "the retirement board *shall* initiate a civil action in the superior court for the revocation or reduction of any retirement or other benefit or payment to which the public * * * employee is otherwise entitled," thereby clearly ensuring the safeguard of due process in a judicial setting and also thereby precluding a unilateral decision by the Board. (Emphasis added.)

As the final arbiter on questions of statutory construction, "this court has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning." *In re Falstaff Brewing Corp.*, 637 A.2d 1047, 1049 (R.I.1994). Because of the reasons stated above, we are led to the conclusion that the Legislature intended PEPRRA to supersede *Almeida.* Consequently, we hold that PEPRRA is controlling in this case, and therefore, we review defendants' petition accordingly.

Our thorough study of the record shows that plaintiff has not been "convicted of," nor did he plead "guilty or nolo contendere" to, any "crime" that would initiate a pension suspension under § 36–10.1–3 of PEPRRA. The state's charge of embezzlement against plaintiff has been dismissed and is pending on appeal at this time. The plaintiff's conviction of two misdemeanors does not amount to a final conviction of a "[c]rime related to public office or public employment" as defined by § 36–10.1–2(a) of PEPRRA. The Board has failed to demonstrate that it is justified, under PEPRRA, in initiating an action to suspend plaintiff's pension payments.

The defendants have urged this court to look to *Almeida* as ample authority for the suspension of the plaintiff's pension. The facts in *Almeida*, however, were quite different from those in the case before us. First, the allegations of misconduct were deemed admitted by the former justice in *Almeida. Almeida*, 611 A.2d at 1378. In this case, the plaintiff has not admitted to any wrongdoing and is appealing his conviction of the two misdemeanors. Second, "[j]udges especially are to be held to a higher standard of conduct * * * embodying ethics, integrity, and honesty," and the misconduct admitted in *Almeida*, which included bribery and fee-splitting, cut to the heart of judicial service, that of the "unbiased arbiter and the objective decision maker." *Id.* at 1389. Third and most significantly, PEPRRA was enacted subsequent to *Almeida* by a Legislature that was fully aware of that opinion.

Because the language of the statute is clear, PEPRRA must be applied literally. *Pizza Hut of America, Inc. v. Pastore*, 519 A.2d 592, 593 (R.I.1987). In the plain and ordinary meaning of its words, *Trifari v. Employees' Retirement System of Providence*, 485 A.2d 100, 102 (R.I.1984), PEPRRA is clear and unambiguous in dictating the ineluctable conclusion that absent a conviction or a plea of guilty or nolo contendere to one of the felonies enumerated in § 36–10.1–2(a) of PEPRRA, the defendants may not suspend the plaintiff's pension payments.

Accordingly, we deny and dismiss the defendants' petition without prejudice, we quash the writ heretofore issued, and we remand the case to the Superior Court.