**Ronald KNAGGS et al.**

v.

**R. Gary CLARK, Tax Administrator
for the State of Rhode Island.**

No. 94–475–MP.

Supreme Court of Rhode Island.

Dec. 11, 1996.

G. Scott Nebergall, Marc A. Crisafulli, Providence, for Plaintiff.

Marcia McGair Ippolito, Bernard J. Lemos, Providence, for Defendant.

**OPINION**

BOURCIER, Justice.

This case comes before us on a petition for certiorari brought by R. Gary Clark, the state tax administrator, seeking review of a final judgment of the Sixth Division District Court, in favor of the respondent-taxpayers, Ronald and Shelley B. Knaggs (the Knaggs). A District Court judge found that the federal tax on excess golden parachute payments, contained in I.R.C. § 4999, was an excise tax and not an income tax subject to taxation as income in Rhode Island. The question before this Court is whether that finding by the District Court was correct. For the reasons that follow, we conclude that it was.

The issue in question was presented to the District Court pursuant to an agreed stipulation of facts. Those facts are as follows.

In 1988 Ronald Knaggs (Knaggs) terminated his position at Computervision in Burlington, Massachusetts, after that business was acquired by another firm. Upon leaving his employment, Knaggs received a substantial termination payment in addition to his usual compensation. That severance payment qualified as a golden parachute payment un-

der federal tax law. *See* I.R.C. § 280G(b)(2).[1]

In the same year that Ronald Knaggs received the golden parachute payment, he and his wife filed a joint federal income tax return. On that return the Knaggs reported the golden parachute payment as income, along with their other earnings for that year. All of that reported income and those earnings were used in calculating their 1988 federal adjusted gross income. On that adjusted gross income, the Knaggs paid a tax of $118,950, which was reported on line 40 of their federal income tax 1040 form. In addition to the $118,950, they paid an additional tax of 20 percent of the portion of the golden parachute payment deemed to be an "excess parachute payment" under federal tax law.

*See* I.R.C. §§ 280G(b) and 4999.[2] The amount of the Knaggs' 20 percent tax was determined to be $68,759. Thus, the total amount of federal income tax liability due from the Knaggs on their 1988 joint federal income tax form, including both the tax on their adjusted gross income and the 20 percent excess parachute payment tax, was $187,469, and that amount was reported on line 53 of their federal income tax 1040 form.

The Knaggs also filed a joint income tax form in Rhode Island in 1988. Since Rhode Island income taxes are piggybacked on federal income taxes pursuant to G.L.1956 § 44–30–2(b),[3] the Knaggs were required to report on their Rhode Island income tax form their federal income tax liability, that is, the amount of federal income tax based on their

---

1. Internal Revenue Code § 280G reads, in pertinent part, as follows:

    "(b) * * *

    "(1) Parachute payment defined. (A) In general. The term 'parachute payment' means any payment in the nature of compensation to (or for the benefit of) a disqualified individual if—

    (i) such payment is contingent on a change—

    (I) in the ownership or effective control of the corporation, or

    (II) in the ownership of a substantial portion of the assets of the corporation, and

    (ii) the aggregate present value of the payments in the nature of compensation to (or for the benefit of) such individual which are contingent on such change equals or exceeds an amount equal to 3 times the base amount.
    * * *

    (3) Base amount. (A) In general. The term 'base amount' means the individual's annualized includible compensation for the base period.
    * * *

    (c) Disqualified individuals. For purposes of this section, the term 'disqualified individual' means any individual who is—

    (1) an employee, independent contractor, or other person specified in regulations by the Secretary who performs personal services for any corporation, and

    (2) is an officer, shareholder, or highly-compensated individual.
    * * *

    [T]he term 'highly-compensated individual' only includes an individual who is (or would be if the individual were an employee) a member of the group consisting of the highest paid 1 percent of the employees of the corporation or, if less, the highest paid 250 employees of the corporation.

    (d) * * *

    (1) Annualized includible compensation for base period. The term 'annualized includible compensation for base period' means the average annual compensation which—

    (A) was payable by the corporation with respect to which the change in ownership or control described in paragraph (2)(A) of subsection (b) occurs, and

    (B) was includible in the gross income of the disqualified individual for taxable years in the base period.

    (2) Base period. The term 'base period' means the period consisting of the most recent 5 taxable years ending before the date on which the change in ownership or control described in paragraph (2)(A) of subsection (b) occurs (or such portion of such period during which the disqualified individual performed personal services for the corporation)."

2. Excess parachute payments are defined as the "amount equal to the excess of any parachute payments over the portion of the base amount allocated to such payment." I.R.C. § 280G(b)(1).

    Internal Revenue Code § 4999, the section imposing the tax on excess parachute payments, provides that "[t]here is hereby imposed on any person who receives an excess parachute payment a tax equal to 20 percent of the amount of such payment."

3. General Laws 1956 § 44–30–2(b) provides that "[f]ederal income tax liability shall be the amount of federal income tax * * * which the taxpayer would have been liable if the taxpayer had paid federal income tax based on *federal taxable income* as adjusted by the modifications provided in parts II and III of this chapter * * *." (Emphasis added.) Part II of that chapter concerns resident individuals, and part III concerns nonresident individuals.

federal taxable income.[4]  In what they believed to be compliance with that requirement, the Knaggs reported the amount of federal income tax based on their adjusted gross income, that amount being the $118,950 figure reported on line 40 of their federal 1040 form.  They did not report on the Rhode Island income tax form the figure that included the 20 percent tax on the excess golden parachute payments, that amount being the $187,469 reported on line 53 of their federal 1040 form.  Based on their computations, the Knaggs paid a total of $27,311 in Rhode Island income taxes for the year 1988.

After the Knaggs paid their Rhode Island income taxes, the Tax Division of the State of Rhode Island determined that there was a discrepancy between the amount of federal income tax liability reported on their federal 1040 form and the amount of federal income tax liability reported on their Rhode Island income tax form.  As a result, the State Tax Division (division) notified the Knaggs of the alleged tax return discrepancy.  The Knaggs responded to the division by letter wherein they explained that the 20 percent tax was an "excess" tax and not subject to Rhode Island income taxes.  Nevertheless, based on its new information, the division recalculated the Knaggs' Rhode Island income taxes on the basis of the $187,469 amount reported on line 53 of their federal income tax form, which included the 20 percent tax on the excess parachute payment.  The division then issued a deficiency assessment in the amount of $18,984 on May 29, 1990.

On June 13, 1990, an administrative review of the assessment was requested by the Knaggs.  An informal preliminary review was held on August 3, 1990, and later a full administrative hearing was convened on November 16, 1990 before an adjudicative officer in the Department of Administration, pursuant to G.L.1956 chapter 35 of title 42.  On January 25, 1991, the tax administrator entered a final decision affirming the $18,984 assessment for additional state income taxes against the Knaggs for the year 1988.

On February 17, 1991, the Knaggs paid the assessment plus an additional $1,958.58 in statutory interest and on February 22, 1991, filed a complaint in the Sixth Division District Court seeking a de novo review of the tax administrator's final decision, pursuant to G.L 1956 § 8-8-24.  A District Court judge, after conducting a de novo review utilizing the stipulated facts agreed upon by the parties, reversed the decision of the tax administrator and found that the federal tax on excess parachute payments was an excise tax, not an income tax.  The District Court judge held, therefore, that the 20 percent golden parachute tax should not have been included in the amount of federal income tax used as a basis for computing the Knaggs' Rhode Island income tax liability.  The tax administrator disputes that finding and seeks review thereof by this petition for certiorari.

■  The Knaggs assert that the 20 percent tax they paid on the excess parachute payment was not subject to the piggyback provisions of the Rhode Island income tax statutes because it was an *excise* tax and not a federal *income* tax.  The tax administrator asserts, conversely, that because the 20 percent tax is reported on the federal income tax form, it is included as part of the amount of federal income tax liability, pursuant to § 44-30-2(b), and must then be reported on the Rhode Island income tax form as the basis for Rhode Island income taxes.  We believe otherwise and conclude that the Knaggs' position is the correct one.

Parachute payments, in general, are viewed with disfavor by Congress because they are often used to discourage takeovers of corporations, thereby hindering mergers and acquisitions in the marketplace.  Staff of Joint Committee on Taxation, 98th Cong., 2d Sess., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, p. 199. In an attempt to limit the use of parachute payments in such situations, Congress established the 20 percent tax on excess parachute payments, which penalizes takeover payments to corporate personnel whose positions are generally affected in the

---

**4.**  The Knaggs did not qualify for any of the modifications in parts II and III of chapter 30, so they were not required to make any adjustments to their "federal taxable income," as provided in § 44-30-2(b).  The significance of that fact will become apparent later in this decision.

process. I.R.C. § 4999. That specific provision, however, never explicitly characterizes or even identifies the 20 percent tax as an income tax, as an excise tax, or as any other kind of tax. Nevertheless, all indications in the Internal Revenue Code lead to the conclusion that the 20 percent tax is not an income tax and is, conversely, an excise or a penalty tax.

█ The 20 percent tax provision set forth in § 4999 is found in the Internal Revenue Code subtitle pertaining to miscellaneous *excise* taxes, subtitle D. That legislatively selected name, while it cannot be used to alter or to control the plain meaning of the language employed in § 4999, *Fiske v. MacGregor, Division of Brunswick,* 464 A.2d 719 (R.I.1983), is certainly relevant where, as here, the plain language of the specific provision does not clearly indicate whether the Legislature intended the tax to be an income or an excise tax, resulting in statutory ambiguity. In such cases, the label of the subtitle containing § 4999, miscellaneous excise taxes may be considered as "a guide to the intent of the Legislature and [it should be] accorded some weight in the interpretation." *State v. Austin,* 462 A.2d 359, 365 n. 5 (R.I.1983); *Orthopedic Specialists, Inc. v. The Great Atlantic & Pacific Tea Co.,* 120 R.I. 378, 384, 388 A.2d 352, 355 (1978).

█ Additional persuasive support for our conclusion that I.R.C. § 4999 is an excise tax can be found in the introductory phrase of § 4999(c)(2) itself. That subsection provides that, "[f]or purposes of subtitle F," the subtitle proscribing procedure and administration, the 20 percent excise tax is to "be treated as a tax imposed by subtitle A," the income tax provisions. I.R.C. § 4999(c)(2). Therefore, according to the clear language used in the qualifying introductory phrase of § 4999, the 20 percent tax is equivalent to an income tax only for the limited purpose of reporting and collecting the tax and not for any other purpose. To interpret the reporting requirements as completely transforming the 20 percent tax into an income tax, as the tax administrator suggests, would render the phrase "[f]or purposes of subtitle F" meaningless, contrary to our rules of statutory construction. *See In re Bernard H.,* 557 A.2d 864, 866 (R.I.1989)("[a] statute should * * * be construed to avoid rendering sentences, clauses, or words as mere surplusage"). Accordingly, the unambiguous language of § 4999 of the Internal Revenue Code itself makes clear that the 20 percent tax is only treated as an income tax for reporting and collecting purposes and is, for all other purposes, an excise tax, as subtitle D's appellation suggests.

Our conclusion that the 20 percent tax is not an income tax also finds support in the decisions of other courts, which have consistently referred to the I.R.C. § 4999 tax as an excise tax and not as an income tax. *See Cline v. Commissioner of Internal Revenue,* 34 F.3d 480, 482 (7th Cir.1994); *Balch v. Commissioner of Internal Revenue,* 100 T.C. 331, 343 (1993); *Powell v. Commissioner of Internal Revenue,* 100 T.C. 77, 81 (1993). Edward A. Zelinsky in his law review article also specifically distinguishes the 20 percent tax from income taxes.

"Section 4999 does not purport to include parachute payments within income or to otherwise clarify the reach of the income tax. * * * Section 4999, therefore, operates independently of, and leaves unaffected, the rules for defining taxable income in the Code.

\* \* \* \* \* \*

"To summarize, sections 280G, 4999 and 5881 cannot be justified as provisions which define the income tax base. Rather than refining the notion of income, these measures evidently constitute penalties for engaging in corporate behavior Congress sought to restrict." Edward A. Zelinsky, *Greenmail, Golden Parachutes and the Internal Revenue Code: A Tax Policy Critique of Sections 280G, 4999 and 5881,* 35 Vill.L.Rev. 131, 162, 164 (1990).

Black's Law Dictionary defines an "excise tax" as

"[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. * * * A tax on the manufacture, sale, or use of goods or the carrying on of an occupation or activity, or a tax on the transfer of proper-

ty. In current usage the term has been extended to include various license fees and *practically every internal revenue tax except the income tax* (*e.g.,* federal alcohol and tobacco excise taxes, I.R.C. § 5001 *et seq.*)[.]" (Emphasis added.) Black's Law Dictionary 563 (6th ed.1990).

It appears to us that the excess parachute payment tax has no indicia of an income tax other than the introductory qualifying phrase of I.R.C. § 4999(c)(2). We note also that the tax administrator, in contending, as he does, that for purposes of § 44–30–2(b), the "federal income tax based on federal taxable income" is the amount the taxpayer reports on line 53 of his or her federal 1040 income tax form, overlooks the fact that if we were to accept that contention, the federal tax on excess parachute payments would not be included in the Rhode Island income taxes of taxpayers who qualify, pursuant to § 44–30–2(b), for the modifications contained in parts II and III of chapter 30 of title 44, but it would have to be included by those Rhode Island taxpayers who do not qualify for those modifications.

Section 44–30–12 provides that a Rhode Island taxpayer qualifying for modifications computes his or her Rhode Island income tax by using "his or her *adjusted gross income* for federal income tax purposes, with the modifications specified in this section." [5] Adjusted gross income, as used in § 44–30–12, is the amount reported on line 31 of the federal 1040 income tax form, which is the basis for the amount of federal income tax liability reported on line 40, the line the Knaggs reported on their Rhode Island income tax form. Thus, if a Rhode Island taxpayer qualifies for modifications, there would be no inclusion of the tax on excess parachute payments because that tax is nowhere mentioned in the modifications and is not included in the federal adjusted gross income. Conversely, if a Rhode Island taxpayer *does not* qualify for modifications, then, according to the tax administrator, that taxpayer's Rhode Island income taxes would be based on the figure reported by the tax-

payer on line 53 of his or her federal income tax form, which is line 40 minus certain credits and plus miscellaneous taxes, including the tax on excess parachute payments. That computation would generate an illogical result since Rhode Island income taxes should be computed on the same base figure regardless of whether a taxpayer qualifies for the statutory modifications. Because the Legislature explicitly designated adjusted gross income as the base figure when modifications are applicable, the most obvious intent of the Legislature was to provide that, when modifications are inapplicable, the federal adjusted gross income should then be used as the base figure for determining the amount of a taxpayer's federal income tax liability.

■ That conclusion as to the legislative intent behind § 44–30–2 is supported by the fact that the inclusion of the 20 percent tax on excess parachute payments was not expressly made a part of the Rhode Island income tax provisions and also the fact that there is no logical statutory interpretation of those provisions that would allow for consistent inclusion of the 20 percent tax for those taxpayers qualifying for modifications and for those taxpayers not qualifying for modifications. Accordingly, we conclude that "federal taxable income" as used in § 44–30–2(b) should be interpreted as meaning a taxpayer's adjusted gross income. Based on that interpretation, "federal income tax liability" as used in § 44–30–2(a)(1)(i) would mean the amount of federal income tax based on a taxpayer's adjusted gross income, the figure reported on line 40. The figure reported on line 53 is not the proper basis for Rhode Island's income taxes. A plain reading of § 44–30–2(b) together with §§ 44–30–12 and 44–30–32 compels that conclusion.

Accordingly, for all the above reasons, the tax administrator's petition for certiorari is

---

**5.** Section 44–30–12 is in part II of the code, but part III also uses the term "adjusted gross income." *See* § 44–30–32.

denied, the writ heretofore issued is quashed, and the judgment of the Sixth Division District Court is affirmed. The papers in this case are remanded to the Sixth Division District Court.