PROVIDENCE JOURNAL COMPANY

v.

Joseph F. RODGERS, Jr., in His Capacity
as Presiding Justice for the Superior
Court of the State of Rhode Island.

No. 97–29–Appeal.

Supreme Court of Rhode Island.

May 21, 1998.

Joseph V. Cavanagh, Jr., Raymond A. Marcaccio, Providence, for Plaintiff.

Joseph F. Penza, Jr., Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

"The public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." [1]

The right to obtain information on criminal proceedings is essential to a free and responsible government. But other compelling state interests can intersect with the First Amendment guarantee of a free press. In the case before us, we address one such interest, namely, that of protecting the identity and privacy rights of child victims of crime. Specifically, Rhode Island's major daily news publication has challenged the policy of the Presiding Justice of the Superior Court of sealing court files in criminal prosecutions involving child victims of sexual assault. We are asked to resolve the conflict between the right to obtain information on criminal proceedings and the need to ensure the confidentiality of the identity of such child victims. This matter was certified to the Supreme Court pursuant to the provisions of G.L.1956 § 9–24–25, upon the filing of an agreed statement of facts by the parties in the Superior Court. The plaintiff, the Providence Journal Company (plaintiff or

Journal), and the defendant, Joseph F. Rodgers, Jr., in his capacity as Presiding Justice of the Superior Court of the State of Rhode Island (Presiding Justice), seek a resolution of their conflicting interpretations of G.L. 1956 § 11–37–8.5.

### Facts and Procedural History

At issue in this case is § 11–37–8.5, the statute governing "Identification of victims of child molestation sexual assault." The statute provides in pertinent part:

"(a) All court records which concern the identity of a victim of child molestation sexual assault shall be confidential and shall not be made public.

"(b) Every agency of state or local government shall protect the confidentiality of documents containing the identity of victims of child molestation sexual assault." [2]

The facts of this case are not in dispute. The parties filed a "Joint Statement of Material Facts" in which they stipulated to the following:

"1. The Clerk for the Providence County Superior Court maintains possession of all court records that refer or relate to the indictment, prosecution, and/or conviction of persons charged with first and second degree molestation of children.

"2. As the Presiding Justice for the Superior Court of the State of Rhode Island, defendant Rodgers is the public official charged with the responsibility of managing the internal affairs of the Superior Court.

"3. The Presiding Justice has interpreted § 11–37–8.5 as mandating that all court records and documents, which concern the identity of a victim of child molestation or sexual assault, shall be confidential and shall not be made public and the Presiding Justice has advised the Chief Clerks of the Superior Court of that interpretation and said clerks, in reliance on

---

[1]. Justice Potter Stewart, *"Or of the Press,"* 26 Hastings L.J. 631, 636 (1975).

[2]. Pursuant to G.L.1956 § 11–37–8.1, "[a] person is guilty of first degree child molestation sexual assault *if he* or she engages in sexual penetration with a person fourteen (14) years of age or un-

der." Section 11–37–8.3 provides that "[a] person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under."

said advice, have adopted as a policy of the court that all files pertaining to the indictments, prosecution, and/or conviction of persons charged with first and second degree molestation of children are to remain sealed and not available for public inspection.

"4. On or about March 11, 1996, the Journal, through counsel, submitted a written request to the presiding justice, to examine certain records. Said request was made pursuant to R.I. Gen. Laws §§ 38–2–2 and 11–37–8.5. * * *

"5. The aforesaid letter requested defendant Rodgers to make available for inspection and/or copying records located in the Providence County Superior Court Clerk's office, regarding first and second degree molestation charges. Said letter further stated that the Journal did not seek access to those court records that identified the alleged victims, as protected by R.I. Gen. Laws § 38–2–2. The Journal requested redacted copies of any documents that identified the alleged victims.

"6. Defendant Rodgers denied the request submitted by the Journal, by letter dated March 18, 1996. Defendant Rodgers

stated that his decision was made pursuant to R.I. Gen. Laws § 38–2–2. * * *

"7. Defendant Rodgers has refused, and continues to refuse to permit public access to the aforesaid records." [3]

On April 5, 1996, the Journal filed a complaint in the Superior Court alleging that the Presiding Justice's refusal to provide access to the requested records violated its rights under the United States Constitution and the Rhode Island Constitution as well as its rights at common law. The Journal sought, inter alia, the issuance of "such orders * * * as may be necessary" to compel the Presiding Justice to make the requested records available.

On January 9, 1997, the parties' joint motion to certify the matter regarding the interpretation of the statute to this Court pursuant to § 9–24–25 [4] was heard before another Superior Court justice. An order granting the motion was entered on January 15, 1997.

On October 30, 1997, the Presiding Justice issued an interoffice memorandum (1997 order) to all clerks of the Superior Court, instructing in part that pursuant to § 11–37–8.5,

"[w]hen a member of the public requests information pertaining to a case involving

---

**3.** N either the Journal's March 11 letter of request nor the Presiding Justice's March 18 letter of denial actually referred to G.L.1956 § 38–2–2, nor did the parties argue the applicability of § 38–2–2 in their briefs to this Court. Chapter 2 of title 38 addresses "Access to Public Records." We assume that the Presiding Justice's intended reference was to § 38–2–2(4)(i), which provides in pertinent part that:

"[F]or the purposes of this chapter, the following records *shall not be deemed public:*
* * *
(S) *Records, reports, opinions, information, and statements required to be kept confidential* by federal or state law, rule, rule of court, regulation, or *by state statute.*" (Emphases added.)

We also assume that the Journal's intended reference was to § 38–2–2(4)(ii), which provides:

"However, any *reasonably segregable portion* as determined by the chief administrative officer of the public body of a public record excluded by this section *shall be available for public inspections after the deletion of the information which is the basis of the exclusion, if disclosure of the segregable portion does not violate the intent of this section.*" (Emphases added.)

The statute defines "chief administrative officer" as "the highest authority of the public body as defined [herein]." § 38–2–2(2). "Public body" is defined in pertinent part as "any executive, legislative, judicial, regulatory, administrative body of the state, or any political subdivision thereof." § 38–2–2(1).

In their respective briefs to this Court, as well as during oral argument, both parties focused exclusively on § 11–37–8.5, the state statute that the Presiding Justice apparently determined rendered the records at issue in this case inaccessible to the public pursuant to § 38–2–2(4)(i)(S).

**4.** General Laws 1956 § 9–24–25 provides:

"**Certification to supreme court on agreed statement of facts.**—Whenever any civil action, legal or equitable in character, is pending in a district court or in a superior court, and the parties shall file in the clerk's office an agreed statement of facts in the action, the court shall certify the action to the supreme court to be there heard and determined. After having decided the action, the supreme court shall send back the papers therein, with its decision certified thereon, to the court from which the action was certified, which shall enter final judgment upon the decision."

child molestation sexual assault, the clerk's office may *verbally* indicate the defendant's *name* and the *disposition* of the case, but nothing further. No documents or other papers in the court file may be viewed by the person inquiring. Should an individual desire more information, [he or she] may be advised to file a motion requesting that the papers of the case be unsealed."

## Standard of Review

■ "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings" in establishing and effectuating statutory intent. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996). In so doing, "[w]e do not * * * interpret a legislative enactment literally when to do so would produce a result at odds with its legislative intent. * * * Rather, we will give the enactment 'what appears to be the meaning that is most consistent with its policy or obvious purpose.'" *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 290 (R.I.1993) (quoting *Zannelli v. DiSandro*, 84 R.I. 76, 81, 121 A.2d 652, 655 (1956)). Additionally, when interpreting a legislative enactment that contains ambiguous language, we "constru[e] the enactment so as to effectuate the intent of the Legislature. * * * In so doing, this Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature." *In re Advisory to the Governor (Judicial Nominating Commission)*, 668 A.2d 1246, 1248 (R.I.1996).

■ Moreover, we are bound "to construe a duly enacted statute as constitutional if such a construction is reasonably possible." *Bouchard v. Price*, 694 A.2d 670, 677 (R.I. 1997) (citing *Landrigan v. McElroy*, 457 A.2d 1056, 1061 (R.I.1983)). In addition, the Legislature "is 'presumed to know the state of existing relevant law when it enacts or amends a statute.'" *Smith v. Retirement*

*Board of Employees' Retirement System of the State of Rhode Island*, 656 A.2d 186, 189 (R.I.1995) (quoting *Narragansett Food Services, Inc. v. Rhode Island Department of Labor*, 420 A.2d 805, 808 (R.I.1980)). Finally, legislation "that is in derogation of the common law" is subject to strict construction. *Kelly v. Marcantonio*, 678 A.2d 873, 876 (R.I. 1996).

## The Issue

We begin by emphasizing what is *not* at issue in this case. The plaintiff has not challenged the constitutionality of the statute or the purpose of § 11–37–8.5 to keep confidential the identities of victims of child molestation sexual assault nor has plaintiff contested the Legislature's authority to effectuate that purpose. The Journal specified that it "seeks access to those records that do not identify the victims of [child] molestation and also seek[s] copies of records that have redacted the information that identifies such victims." It argued that the issue to be resolved is "how the intent of the legislature, to protect the identity of child molestation victims, can be achieved while concurrently recognizing the public's legitimate interest in access to criminal proceedings and records."

We note that subsequent to the Presiding Justice's complete denial of access to child molestation sexual assault court files in March 1996, his 1997 order permitted the disclosure of limited verbal information, namely, a defendant's name and the disposition of the case. In his brief to this Court, the Presiding Justice asserted that "[i]n passing § 11–37–8.5 the legislature did not intend to deny access to all of the court records in child molestation cases." Moreover, counsel for the Presiding Justice stated at oral argument before this Court that any documents in a child molestation sexual assault criminal file that do not contain victim-identifying information would be exempt from the coverage of § 11–37–8.5.[5]

We agree with the parties that § 11–37–8.5 does not grant confidentiality to the records or documents in child molestation sexual as-

---

**5.** The parties did *not* refer to the 1997 order in their briefs, which were submitted to this Court several months prior to the issuance of the order.

The 1997 order was furnished to this Court following questioning at oral argument regarding the Superior Court's current policy.

sault cases that do not contain victim-identifying information.[6] Therefore, we must (1) determine how to implement public access to documents that do not identify a child victim and (2) ascertain whether the statute contemplates public access to documents from which victim-identifying information has been redacted. In short, does the Journal's view that "the plain language of the statute," "only contemplates the closure of those court records that *identify* the *victim* of sexual assault; the remaining portions of the court records must remain available for public inspection" prevail over the Presiding Justice's claim that "[t]he plain terms of the statute make no provision for the redaction of portions of the records"?

### Guiding Principles

■ It is well settled that "[t]he First Amendment generally grants the press no right to information about a trial superior to that of the general public [and] * * * 'a reporter's constitutional rights are no greater than those of any other member of the public.' " *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570, 587 (1978) (quoting *Estes v. Texas*, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543, 584 (1965) (Harlan, J., concurring)). *Cf. Edward A. Sherman Publishing Co. v. Goldberg*, 443 A.2d 1252, 1258 (R.I.1982) ("[t]he press enjoys no greater right of access to juvenile proceedings than does the general public").

■ That the press and the public have a First Amendment right of access to criminal trials is beyond dispute. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 991–92 (1980). But such right is not absolute. Access may be denied when such denial is narrowly tailored to serve a compelling government interest. *Globe Newspaper Co. v. Superior Court for Norfolk*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982). In addition, the Sixth Amendment guarantee of a public trial "confers no special benefit on the press [and] * * * is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon*, 435 U.S. at 610, 98 S.Ct. at 1318, 55 L.Ed.2d at 587. Because the Journal has not alleged that its right to attend trials in child molestation sexual assault cases has in any way been infringed, the constitutionally protected right to attend criminal trials is not at issue. *Cf. Globe*, 457 U.S. at 607–08, 102 S.Ct. at 2620–21, 73 L.Ed.2d at 258 (holding that a state may not adopt a mandatory closure rule excluding the press and general public from sexual assault trials when a juvenile victim is testifying but, rather, must determine on a case-by-case basis whether closure is appropriate to protect the state's interests).

■ The United States Supreme Court has observed that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597, 98 S.Ct. at 1312, 55 L.Ed.2d at 579. This "common-law right of access" and right "to inspect and copy judicial records," although "not absolute," *id.* at 598, 599, 98 S.Ct. at 1312, 55 L.Ed.2d at 580, has, for example, been successfully invoked by a citizen who sought "to keep a watchful eye on the workings of public agencies," and by a newspaper publisher who intended "to publish information concerning the operation of government." *Id.* at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 579–80.

---

**6.** To the extent that the Presiding Justice, in denying the Journal's March 11 request in its entirety and in issuing the 1997 order, effectively determined to the contrary, such a sweeping view of the scope of § 11–37–8.5 is erroneous. Subsection (a) of § 11–37–8.5 pertains to the confidentiality of all court documents "which concern the identity of a victim of child molestation sexual assault." Similarly subsection (b) refers to the confidentiality of documents "containing the identity of victims of child molestation sexual assault." Under a plain reading of the statutory language, these modifying clauses limit the scope of the documents intended to be kept confidential. To construe § 11–37–8.5 to deny access to *all* records and documents in child molestation sexual assault court files is to contravene the well-settled canon of statutory construction whereby " '[a] statute should * * * be construed to avoid rendering sentences, clauses, or words as mere surplusage.' " *Knaggs v. Clark*, 686 A.2d 466, 469 (R.I.1996) (quoting *In re Bernard H.*, 557 A.2d 864, 866 (R.I.1989)).

■ Although the state may not bar or punish the publication of legally obtained information pertaining to criminal trials, *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349–50 (1975) ("[t]he First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection"); *Goldberg,* 443 A.2d at 1257 (holding invalid a trial justice's order penalizing the media "for their having published lawfully obtained information"), not all information in respect to criminal trials may be so obtained. That the United States Supreme Court has contemplated the denial of public access to certain portions of a criminal court file is evident from its pronouncement that

"[b]y placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. * * * *If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information.* Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish." *Cox,* 420 U.S. at 495–96, 95 S.Ct. at 1046–47, 43 L.Ed.2d at 349–50. (Emphasis added.)

Although the right of access to records or documents in criminal cases is of *common-law* origin, the *Nixon* Court made clear that a curtailment of access to records or documents in such cases should be evaluated by a balancing test identical to that performed in the case of governmental curtailment of a *constitutional* right. *Nixon,* 435 U.S. at 602, 98 S.Ct. at 1314, 55 L.Ed.2d at 582 (referring to "the task of weighing the interests advanced by the parties in light of the public interest and the duty of the courts"). In conformity with *Nixon,* this Court has adopted a balancing-test approach in deter-

mining the public's right of access to documents in criminal proceedings. For example, in *State v. Cianci,* 496 A.2d 139, 142 (R.I. 1985), a case involving a court protective order that sealed pretrial discovery documents, we essentially equated the right to attend criminal trials with the right to access records or documents in such trials. After discussing (then) recent United States Supreme Court cases addressing public access to criminal trials, we concluded that

"[w]hat emerges from these cases is a four-part inquiry that should be made by the trial court before closure is justified. A protective order (1) must be narrowly tailored to serve the interests sought to be protected, (2) must be the only reasonable alternative, (3) must permit access to those parts of the record not deemed sensitive, and (4) must be accompanied by the trial justice's specific findings explaining the necessity for the order." *Cianci,* 496 A.2d at 144.

Although a court policy that attempts to implement a statutory directive is at issue here, any limitation of public access to criminal case records or documents in criminal proceedings warrants application of the balancing test.

### Statutory Interpretation

■ Turning our attention to the statute at issue, we are of the opinion that § 11–37–8.5 can be reasonably interpreted to support either the position of the Presiding Justice or that of the Journal in respect to redaction. Section 11–37–8.5(a) provides that "[a]ll court records which concern the identity of a victim of child molestation sexual assault shall be confidential and shall not be made public." Had this subsection begun with the words "all *portions of* court records," the statute would have more clearly manifested an intent to permit redaction of information identifying child victims in court records. Nevertheless, we cannot conclude that the statute unequivocally bars the redaction of records that contain victim-identifying information, because the Legislature has in other sections of the General Laws more definitively provided that certain records in their entirety be unavailable to the public. For example, G.L.1956

chapter 5 of title 40.1, addressing "Mental Health Law," directs in pertinent part that "[t]he records and files maintained in any court proceeding pursuant to this chapter shall be confidential and available only to the person who was the subject of the proceeding or his or her attorney." § 40.1–5–26(b)(7).

Bound to construe § 11–37–8.5 in a manner consistent with the policies and purposes of the Legislature, *In re Advisory to the Governor, ante,* and mindful of the aforementioned guiding principles that protect the right of access to records in criminal cases, we have carefully considered the positions of the parties in reaching the following conclusions. The General Assembly clearly intended to prevent the identification of child victims of sexual assault in recognition of their protected status in our society. The Legislature's interest in protecting youngsters from the stigmatization that may result from their public identification is evident.[7] Indeed, even the identity of juvenile offenders is kept confidential in order to foster juvenile rehabilitation. *See, e.g.,* G.L.1956 § 14–1–64 ("[a]ll police records relating to the arrest, detention, apprehension, and disposition of any juveniles, shall be kept in files separate and apart from the arrest records of adults and shall be withheld from public inspection"); *Matter of Falstaff Brewing Corporation Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1051–52 (R.I.1994) (citing "the legislative intent to afford juveniles the opportunity to enter adulthood free of the stigmatization that follows criminal offenders"). Even more justified is protecting the identity of an innocent child who has been victimized by a sex offender.

Clearly, "a State's interest in 'the protection of minor victims of sex crimes from further trauma and embarrassment' is a 'compelling' one." *Maryland v. Craig,* 497 U.S. 836, 852, 110 S.Ct. 3157, 3167, 111 L.Ed.2d 666, 683 (1990) (quoting *Globe,* 457 U.S. at 607, 102 S.Ct. at 2620, 73 L.Ed.2d at 257–58). We weigh against this compelling interest the well-settled principle that

"in a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations." *Cox,* 420 U.S. at 491–92, 95 S.Ct. at 1044, 43 L.Ed.2d at 347.

Our interpretation of § 11–37–8.5 attempts to balance the protection of the identity of child victims of sexual assault with safeguarding the public's interest in the fairness of criminal prosecutions.

The interpretation advanced by the Journal, which allows access to redacted copies of *all* court documents or records in child molestation sexual assault cases, assumes incorrectly that a child victim possesses a legitimate privacy interest only in his or her name and other identifying information. In contrast, the Presiding Justice's interpretation, which bars the inspection of *any* record that contains a reference to the child victim's name or identity, impermissibly restricts the right of access to information on criminal prosecutions.

Taking into account all these considerations, and in accordance with our general supervisory authority over courts of inferior jurisdiction, G.L.1956 § 8–1–2; *Knott v. Langlois,* 102 R.I. 517, 529, 231 A.2d 767, 773 (1967), we direct that the Superior Court, under the auspices of the Presiding Justice,

---

7. *See, e.g.,* G.L.1956 chapter 28 of title 12, "Victim's Rights," wherein "[t]he general assembly finds that it is necessary to provide child victims and witnesses in family, district or superior court with special consideration and treatment beyond that usually afforded to adults." § 12–28–9; G.L. 1956 chapter 72 of title 42, addressing "Department of Children, Youth, and Families," which provides in pertinent part that "[a]ny records of the department pertaining to children and their families in need of service pursuant to the provi-

sions of this chapter or for whom an application for services has been made shall be confidential and only disclosed as provided by law." § 42–72–8(a); G.L.1956 chapter 2 of title 38, addressing "Access to Public Records," which provides for the confidentiality of student records, § 38–2–2(4)(i)(A)(I); G.L.1956 chapter 73 of title 42, addressing "Office of the Child Advocate," which provides that "[a]ll records of the child advocate pertaining to the care and treatment of a child shall be confidential." § 42–73–10.

establish through its Rules of Practice specific procedures by which the following policy shall be implemented. One procedure will be followed in cases that will be prosecuted in the future, and a second procedure will accommodate those cases in which charges have already been brought.

■■■ In the future, whenever a child victim is identified in any child molestation sexual assault case brought later than sixty days from the date of this opinion, a dual filing system shall be established for that case. During the prosecution and disposition of such a case, a "public file" and a "confidential court file" shall be maintained. The public file shall contain the charging document (indictment or information) with the name and identifying information of the child victim redacted. "Redaction" is defined as the obliteration of victim-identifying information in the documents placed in the public file. The name and address of the victim will be redacted along with any familial-identifying information such as the relationship, if any, between the child victim and the accused. A fictitious name may be substituted for the victim's actual name. Such redaction or substitution shall be carried out by the party placing the material on file. When applicable, a party submitting material that identifies a victim shall submit two versions of each document to be placed on file: one version, from which all victim-identifying information

has been redacted or made fictitious, to be placed in the public file; and a second version of the same document, unredacted, to be placed in the confidential court file. This policy would not preclude the submission of two identical copies of a non-victim-identifying document, one of which would be placed in the public file and one in the court file. This policy assigns to the parties the responsibility in the future for submitting court documents in the two formats. Such a procedure comports with that in effect in the federal courts in federal prosecutions involving child victims of crimes of physical abuse, sexual abuse, or exploitation.[8]

Further, the public file shall *not* include in any form, redacted or otherwise, victim-specific documents relating to the child victim that are otherwise confidential under the statutes and policies of our state. Such excluded documents include, but are not limited to, school records, medical records, reports from the Department of Children, Youth and Families, reports or records of counselors, therapists, and social workers, and other similar victim-specific documents that are privileged by law or custom and for which no meaningful purpose for public disclosure exists. All other documents—that is, documents that are not victim-specific—shall be placed in the public file, in redacted form as necessary.[9] Some documents may not require redaction.

---

8. Subsection (d)(2) of 18 U.S.C. § 3509, "Child victims' and child witnesses' rights," provides in pertinent part:

 "Filing under seal. All papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal without necessity of obtaining a court order. The person who makes the filing shall submit to the clerk of the court -
 (A) the complete paper to be kept under seal; and
 (B) the paper with the portions of it that disclose the name of or other information concerning a child redacted, to be placed in the public record."

9. Additional statutory support for redaction is found in G.L.1956 § 38–2–2. *See* note 3 *ante.* Section 11–37–8.5 was first enacted by P.L.1985, ch. 380, § 2. The subsection of § 38–2–2 that provides for the public inspection of any "reasonably segregable portion" of documents containing confidential information—first codified as § 38–2–2(d)(19)—was enacted by P.L. *1979,* ch.

202, § 1. This Court has consistently held that the Legislature is presumed to know the relevant existing law when enacting a statute. *See Smith v. Retirement Board of Employees' Retirement System of the State of Rhode Island,* 656 A.2d 186, 187 (R.I.1995). Section 38–2–2(d)(19), though worded somewhat differently from its present form in § 38–2–2(4)(ii), provided similarly:

 "However, any reasonably segregable portion as determined by the chief administrative officer of the public body of a record excluded by this section shall be deemed a public record after the deletion of the information which is the basis of the exclusion, if disclosure of said segregable portion does not violate the intent of this section."

Moreover, at the time of the 1985 passage of § 11–37–8.5, the relevant subsection of § 38–2–2 contained language basically identical to that contained in its current form. P.L.1984, ch. 372, § 2. We presume, as we must, that the Legislature was aware of the relevant section of § 38–2–2 when it enacted § 11–37–8.5. Because, as dis-

Accordingly, within sixty days of the date of this opinion, the Superior Court shall establish Rules of Practice under the direction of the Presiding Justice of the Superior Court, in accordance with Super. Ct. R.P. 1.1, that shall promulgate, implement, and supervise the dual-format filing system.

With respect to the approximately 500 cases that are currently at various stages of prosecution, the following policy shall be implemented by the Presiding Justice in his discretion through the Rules of Practice or by administrative order. Any individual seeking information beyond that allowed by the Presiding Justice's 1997 order shall do so by motion to be heard by the Presiding Justice or a designee. The justice hearing the motion shall determine, depending on the extent of information requested, whether a public file should be compiled. A complete public file would ordinarily contain copies of the charging instrument, information package, docket sheet, memoranda, and motions, along with information on the prosecution and disposition of the case.

After making such a determination, the hearing justice shall appoint a qualified individual, most likely an attorney, to select, copy, and/or redact the requested information from the existing file. A requesting party may wish to examine or obtain copies of only specific items in currently existing files, for example, the docket sheet, or the charging document, or a memorandum of one of the parties. Although the number of cases in this category is large, this group represents a finite number that will decrease over time and whose recurrence will be precluded by the dual-filing system.

The cost of providing information on the cases already under prosecution shall be borne by the party making the request. We note that numerous other statutory provisions require that a party requesting copies of public records bear the cost of producing such information. *See, e.g.,* G.L.1956 §§ 38–2–4(a) and (b). The assessment of costs is necessary because the selection and the redaction of documents in these existing files require more skill and effort than are required to perform routine copying of records. The documents and the information in these files were originally compiled without attention to concealing the identity of child victims. We believe that our solution is a fair one that balances the interest of all the parties. Unfortunately, current staffing does not permit underwriting the cost of providing redacted information. The Legislature, of course, as a matter of public policy, can decide through legislation and/or an appropriation to make records compiled from existing cases available without cost to the public or to the media.

It is our opinion that implementation of this procedure reconciles the important interests at stake here: protecting the identity of child victims with making information on prosecutions available to the public. Moreover, the future dual-filing system provides a narrowly tailored method to serve the compelling interest in protecting child victims from stigmatization and embarrassment beyond that which the underlying crime has already produced. *See Globe, ante.* The nondisclosure of victim-specific portions of the court file is consistent with our precedents that have held that certain court documents are not subject to public disclosure. *See, e.g., State v. Cianci,* 485 A.2d 565, 566–67 (R.I.1984) ("[w]e do not hesitate to declare the [presentence] report confidential and certainly not to be disclosed to third persons").

In conclusion, we remand this matter to the Superior Court for further proceedings in accordance with our response to the certified question herein presented.

BOURCIER, J., did not participate.

---

cussed above, we conclude that the language of § 11–37–8.5 does not evince an unequivocal intention to keep all court records in child molestation sexual assault cases confidential, we are of the opinion that the disclosure exception pursuant to (the current) § 38–2–2(4)(ii) was meant to apply to § 11–37–8.5.