STATE

v.

**Vincent A. CIANCI, Jr., et al.**

**Nos. 84–31–M.P., 84–83–M.P.**

Supreme Court of Rhode Island.

July 22, 1985.

See also 485 A.2d 565.

Joseph V. Cavanagh, Edward F. Hindle, John D. Deacon, Jr. (Edwards & Angell), Providence, Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, for Vincent Cianci.

## OPINION

SHEA, Justice.

This case challenges a protective order sealing pretrial discovery documents in a controversial, well-publicized criminal case.

Vincent A. Cianci, Jr., former Mayor of the City of Providence, was indicted for extortion, assault with a dangerous weapon, kidnapping, conspiracy, and simple assault. In the preparation of his defense of that action, defendant requested discovery from the state pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. On August 4, 1983, defendant and the state both requested that pretrial discovery be sealed from the public. The court, without a hearing, entered an order providing that all discovery material should be sealed. On March 5, 1984, prior to trial, Cianci entered a plea of nolo contendere to one count of assault with a dangerous

weapon and one count of simple assault. The remaining counts were dismissed. Cianci was sentenced to five years at the Adult Correctional Institutions on the assault-with-a-dangerous-weapon charge, the execution of which was suspended, and he was placed on probation for five years. He was sentenced to one year on the simple-assault charge, which sentence was also suspended, with one year's probation. As a result of his sentence, Cianci was forced to vacate the office of Mayor of the City of Providence on April 25, 1984. *See Gelch v. State Board of Elections*, R.I., 482 A.2d 1204 (1984).

In the interim, the Providence Journal Company (the Journal) and the Outlet Company, doing business as WJAR (intervenors), filed motions for leave to intervene and sought to have set aside the order that had sealed the discovery documents. Following a hearing, the court entered an order granting the motion for leave to intervene but denied the motion to vacate the order sealing the discovery.

On May 24, 1984, this court granted a petition for certiorari by the Journal and WJAR to review the Superior Court action. At the same time we granted a petition for certiorari by Cianci in which he sought review of the Superior Court's decision permitting the Journal and WJAR to intervene. These petitions were ordered consolidated for hearing. The questions raised in these petitions are whether the Superior Court justice erred in refusing to vacate the order sealing discovery and whether it was error to permit the media to intervene.

■ At issue here are the competing rights and interests of the parties—defendant's right to a fair trial balanced against the right of the press or public to have access to criminal proceedings. This is not a case of direct prior restraint since the court has not sought to prohibit the press from publishing *any* information it may have gathered. Rather, the issue is narrowed to the right of the press and the public to have access to documents obtained through the discovery mechanism of Rule 16 of the Superior Court Rules of Criminal Procedure. Nevertheless, we are of the opinion that the same fair-trial considerations are present at all phases of the proceedings; therefore, our holding today is not limited to the facts in this record.

■ Generally in criminal cases the sealing of court records or proceedings is done with a view toward protecting the rights of the defendant to a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620 (1966); *Estes v. Texas*, 381 U.S. 532, 538, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543, 548 (1965). In the posture in which these petitions were presented, those factors no longer existed because defendant had entered a plea and had been sentenced. The case effectively had come to an end on March 5, 1984. Consequently, on this state of the record, there does not now exist any threat to defendant's Sixth Amendment right to a fair trial. In these circumstances the claims of these parties are technically moot, and ordinarily this court will not undertake to decide a question that is not related to an actual controversy. Appellate review is appropriate, however, when it appears that resolution of the question is in the public interest, as for guidance in future cases, and when the controversy is capable of repetition, yet evades review. *Edward A. Sherman Publishing Co. v. Goldberg*, R.I., 443 A.2d 1252, 1256 n. 6 (1982); *Morris v. D'Amario*, R.I., 416 A.2d 137, 139 (1980). We believe this is such a case.

■ We recognize at the outset that a court possesses the inherent power to control the conduct of its own proceedings, and there is little doubt that under certain circumstances a court may exclude the public and the press from its proceedings; however, such authority must be cautiously exercised. *Miami Herald Publishing Co. v. Collazo*, 329 So.2d 333, 336 (Fla.Dist.Ct. App.1976). We recognize also that various aspects of the constitutional guarantee of freedom of the press have received varying

treatment in recent years by the Supreme Court of the United States.[1] *Compare Gannett Co. v. DePasquale*, 443 U.S. 368, 391, 99 S.Ct. 2898, 2911, 61 L.Ed.2d 608, 628 (1979) (public has no constitutional right under Sixth and Fourteenth Amendments to attend criminal trials) *with Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, ——, 104 S.Ct. 819, 825, 78 L.Ed.2d 629, 639 (1984) (closure of pretrial *voir dire* to protect privacy of potential jurors violated First Amendment freedom of the press); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982) (right of access to criminal trials is not absolute; it must be shown that denial is necessitated by a compelling governmental interest); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973, 989–90 (1980) (first amendment vests the public with a right to attend criminal trials); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579 (1978) (recognizing a general right to inspect and copy judicial records and documents); *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683, 704 (1976) (subordination of Sixth Amendment right to a fair trial to First Amendment right to publish except in uniquely compelling circumstances).

Against this background and current trend toward the expansion of First Amendment rights, we turn to the merits of the case.

## I

### PROTECTIVE ORDER

To understand the particular circumstances involved, one must first understand the purpose and use of protective orders, which understanding requires, retrospectively, a review of the underlying rationale of discovery in general. Rule 16 is the primary mechanism "to ensure that both parties receive the fullest possible presentation of the facts prior to trial. * * * The primary purpose of discovery is to eliminate surprise at trial." *State v. Concannon*, R.I., 457 A.2d 1350, 1353 (1983). "The trial of a criminal case is not to be considered a poker game in which each player holds his cards close to his vest. It is, as are all trials, a search for the truth." *State v. Diaz*, R.I., 456 A.2d 256, 258 (1983). Rule 16 has been characterized as "the most liberal and complete reciprocal mechanisms for discovery to be found * *." *State v. Darcy*, R.I., 442 A.2d 900, 903 (1982); *see State v. Coelho*, R.I., 454 A.2d 241, 244 (1982). The present Rule 16 eliminates the requirement of a motion by a party seeking discovery. Instead, discovery is initiated by written request between the parties. Under the 1974 amendment there is no requirement that the fruits of discovery be filed in court. *See* Reporter's Notes to amendment to Rule 16. The reality of the situation, then, is that most discovery takes place without court intervention. All of this is consistent with the underlying policy of discovery and the expectation of the parties and the courts that discovery requires the fullest and most complete disclosure of information in order to assist in preparation for trial.

Even if the discovery materials are filed, the public's right of access is not absolute since under Rule 16(f) a court may, on the motion of any party, enter a protective order denying, restricting, or deferring discovery upon motion and sufficient showing that witnesses for either side will be subjected to intimidation, harm, or bribery. *See* Reporter's Notes to amendment to Rule 16. We believe it is implicit from the absence of any requirement that discovery be filed with the court that pretrial discovery often involves hearsay and other materials that are never admissible at trial. It happens fairly often that a trial is not held after pretrial discovery. Consequently, a protective order may be neces-

---

**1.** *See* Weisberger, *A Tale of Two Privileges,* 15 Suffolk U.L.Rev. 191 (1981) (role of the judiciary in balancing competing constitutional interests).

sary to protect a number of interests by precluding disclosure of otherwise confidential information that may have untoward consequences wholly unnecessary to final preparation of the case for trial.

When a party moves for a protective order, the court may, in the presence of counsel for both parties, conduct an *in camera* inspection of the documents and materials to assist it in determining whether fair-trial considerations militate against disclosure. If after that review the court determines that a reasonable probability of prejudice exists, the documents at issue and the record developed *in camera* may be sealed and made a part of the file in the case. Thereafter, at an appropriate hearing any party claiming a right of access has the burden of demonstrating that its need for information outweighs any potential impairment of defendant's right to a fair trial. The task of the court then becomes one of both balancing the public interest in protecting the flow of information against the individual's right to prepare his defense and determining whether, and to what extent, the constitutional rights must yield.

Varying procedural and substantive tests have emerged from recent Supreme Court public-access-to-criminal-trial cases aimed at striking a balance between preserving the concept of "openness" to judicial proceedings and protecting Sixth Amendment guarantees. In *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 610–11, 102 S.Ct. at 2622, 73 L.Ed.2d at 260, the Court struck down as unconstitutional a Massachusetts statute requiring courtroom closure in cases where minors were testifying about sex crimes against them. The *Globe Newspaper* Court held that "[w]here * * *

the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606–07, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. In a more recent case the Court went a step further and held that closure of a pretrial *voir dire,* ostensibly to protect the privacy of potential jurors, was also a violation of press and public First Amendment rights. *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The *Press-Enterprise* Court criticized not only the trial court's failure to consider alternatives to closure and to the total suppression of the *voir dire* transcript but also its failure to articulate specific findings explaining why its sweeping order was not limited to information that was actually sensitive and entitled to privacy. *Id.* at —, 104 S.Ct. at 826, 78 L.Ed.2d at 640.

What emerges from these cases is a four-part inquiry that should be made by the trial court before closure is justified. A protective order (1) must be narrowly tailored to serve the interests sought to be protected, (2) must be the only reasonable alternative, (3) must permit access to those parts of the record not deemed sensitive, and (4) must be accompanied by the trial justice's specific findings explaining the necessity for the order.

In the matter before us, the media contend that the trial court, by ordering the pretrial-discovery documents sealed from the press and the public, denied them their constitutional and common-law right to have access to all judicial proceedings.[2]

2. With respect to the common-law right of access, *see Gannett Co. v. DePasquale,* 443 U.S. 368, 387–88, 99 S.Ct. 2898, 2909–10, 61 L.Ed.2d 608, 626 (1979) ("there exists no persuasive evidence that at common law members of the public had any right to attend pretrial proceedings; indeed, there is substantial evidence to the contrary. * * * And pretrial proceedings, precisely because of the same concern for a fair trial, were never characterized by the same degree of openness as were actual trials"). *See also Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598–99, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570, 580 (1978) (in discussing the common-law right of access, the Court endorsed the position that decisions regarding access are best left to the discretion of the trial court). Relying on this language, we do not believe that a separate discussion of the media's common-law-right-of-access claim is necessary.

The media further contend that even if the Superior Court justice was authorized to seal judicial documents, he failed to apply the requisite balancing test to justify the closure. The countervailing argument by Cianci is that the press has neither a constitutional nor a statutory right of access to pretrial discovery of the names of witnesses, copies of their anticipated testimony, or their testimony in the grand jury. The state takes the position that the trial justice acted well within his discretion in entering the protective order, citing a recent United States Supreme Court case upholding judicial discretion to issue protective orders in civil cases. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).[3]

The record in this case indicates that the trial court, at the request of the parties and without a hearing, ordered that all discovery to be filed be placed under seal before any pretrial-discovery documents had been filed. There is no evidence in the record that the media was aware prior to the commencement of the hearing that the motion to seal would be heard at that time. A hearing was held subsequently on the intervenors' motion to vacate the order, and the motion was denied. The trial court held that the public and the press had no right of access to pretrial discovery. The only reason shown in the record for the denial was that disclosure "could create a substantial probability that defendant would not get a fair trial in this geographically small state."

■■■ It is clear that the trial court's brief inquiry and blanket statement of a potential prejudice was not sufficient to demonstrate compelling reasons for ordering the sealing of the discovery documents.

Therefore, we must remand the case to the Superior Court for a more thorough inquiry and explanation, based on the four criteria. Should the sealed material contain details that are "painful and sometimes disgusting," *Request of Caswell,* 18 R.I. 835, 836, 29 A. 259, 259 (1893), the court might well decline to release those parts of the record. Such a result would be consistent with Rule 3.3 of the Superior Court Rules of Practice, which envisages matters not for publication.[4] On remand, before making a decision, the trial justice should conduct a hearing at which representatives of the press may be heard before they are excluded or material is ordered sealed.

## II

### INTERVENTION

■■■ We now consider defendant's challenge to the propriety of the trial justice's grant of the media's motion to intervene. In his petition defendant asserts that intervention in criminal proceedings is improper and that the appropriate remedy in this case should have been a separate civil action. We agree.

■■■ The process of intervention enables persons who were not parties to the original proceeding to assert their interests in all pending aspects of a lawsuit already instituted. In effect, an intervenor attains the status of a party to the original action, joining either the plaintiff or the defendant or opposing both. Intervention is not a matter of absolute right but rather requires a showing that the party seeking to intervene has a substantial interest in the subject matter of the original litigation. 59 Am.Jur.2d *Parties* §§ 129, 138 (1971). Intervention owes its origin to civil law and is

---

**3.** Although instructive, *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) involves the right of a party to the litigation, who *knows* the contents of materials gained through discovery, to communicate further and disseminate that information.

**4.** Rule 3.3 of the Superior Court Rules of Practice provides:

"Matters not for publication.—Matters of record involving scandal or immoral practices shall not be furnished by the court for publication or given out for inspection to any one except to the parties in interest or their representatives."

governed today in most jurisdictions by statutes or rules of practice.

In this jurisdiction intervention in civil cases is permitted under the provisions of Rule 24 of the Superior Court Rules of Civil Procedure, which is modeled after its federal counterpart. Rule 24 provides for intervention either as of right or as permissive intervention. The rule governing intervention of right declares that upon timely application anyone shall be permitted to intervene in an action (1) when a state statute confers such a right or (2) when the applicant's interest is not adequately represented by the existing parties and the applicant may be bound by a judgment or (3) when the applicant's interest in the disposition of the subject property may be adversely affected. *See Marteg Corp. v. Zoning Board of Review of Warwick*, R.I., 425 A.2d 1240, 1242 (1981). The rule governing permissive intervention declares that upon timely application anyone may be permitted to intervene (1) when a state statute confers such a right or (2) when an applicant's claim or defense and the main action have a common question of law or fact.

By its definitions and requirements, it is obvious to us that such a procedural device has no place in a criminal proceeding. As defendant correctly points out, an intervenor, whether a representative of the press or any other private party, has no substantial interest in the actual subject matter of a criminal prosecution, nor would any such intervenor wish to be bound by any judgment of conviction. We acknowledge that there are jurisdictions that have permitted newspapers to intervene in criminal prosecutions for the limited purpose of questioning an order of the trial court sealing depositions. *See News-Press Publishing Co. v. State*, 345 So.2d 865 (Fla.Dist.Ct.App.1977). In that case, the District Court treated the intervenors'

appeal of the denial of their motion to set aside the seal order as a petition for certiorari and remanded the case for specific findings by the trial justice regarding his reasons for the order.

We believe that in future cases of this nature, the better practice would be for representatives of the press or the public to institute a separate, independent action against the sealing authority by way of a complaint for declaratory judgment in the Superior Court. A hearing could then be held, consistent with our holding in part I of this opinion, and in that hearing a record could be created for this court to review if the complaining party is still aggrieved. In this way the public's and the media's interests, which are collateral to the criminal proceeding, can be fully adjudicated without interfering with or interrupting the criminal proceeding in any way. A defendant's constitutional right to a fair trial should not be interrupted or sidetracked while the collateral interests of third parties are adjudicated.[5]

We believe that a declaratory judgment action is the most appropriate remedy for the adjudication of the rights of interested parties in controversies of this type. A ruling on the issue "would terminate the controversy between the parties and would remove any uncertainty between them." *Pennsylvania General Insurance Co. v. Becton*, R.I., 475 A.2d 1032, 1035 (1984). This statutory form of action leaves discretion with the trial court to grant or withhold declaratory relief, which discretion, of course, is not absolute and is subject to appropriate appellate review. *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 628, 240 A.2d 397, 401 (1968); G.L.1956 (1969 Reenactment) § 9–30–7. The main prerequisite to successful prosecution of an action for declaratory judgment is the existence of an actual or justiciable controversy. *Malinou v. Powers*, 114

---

**5.** It is not necessary that the judge hearing the criminal case hear the petition for declaratory judgment. Since the parties bringing the action for declaratory judgment are not before the court in the criminal case, there would be no bar to question the case anew since it would not be controlled by the doctrine of the law of the case.

R.I. 399, 404, 333 A.2d 420, 423 (1975). The case before us presents such a justiciable controversy, in our opinion, and is one that is well within the scope of our Uniform Declaratory Judgments Act. G.L.1956 (1969 Reenactment) chapter 30 of title 9.

The petitions of the Providence Journal and the Outlet Companies are granted, the order giving rise to this controversy is quashed, and those matters are remanded to the Superior Court for reconsideration in the light of our opinion.

The petition of Vincent A. Cianci, Jr., is granted pro forma, and the papers in that case are remanded to the Superior Court with our decision endorsed thereon.