DECISION
The matter before the Court is a request by the Providence Journal Company ("Petitioner") to access[1] certain victim impact statements and letters delivered directly to the Court in connection with the sentencing of the Defendant in State v.Biechele, K1-03-653A. The petition relates to the important right to access criminal proceedings and public records. Media access to criminal proceedings and the public availability of court documents is essential, as it "allows the citizenry to `monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" Federal TradeCommission v. Standard Financial Management Corp., 830 F.2d 404,410 (1st Cir. 1987) (quoting In re Continental IllinoisSecurities Litigation, 732 F.2d 1302, 1308 (7th Cir. 1984)). Additionally, granting access to court proceedings and pertinent court documents increases the awareness and knowledge of the inner workings of the Court system, which can be a valuable educational tool for members of the public. However, after carefully considering the nature of the documents requested, the relevant legal jurisprudence, and the interests at stake, the Court denies the Petitioner's request and declines to release any of the sentencing letters or parts of the sentencing letters. Because of the Court's awareness of the importance of access requests, the reasons for denial of the Petitioner's request are set forth in some detail.
 FACTS AND TRAVEL
In State v. Biechele, Defendant Daniel M. Biechele ("Defendant") was sentenced for the crime of involuntary manslaughter in connection with the one hundred deaths resulting from the Station nightclub fire in West Warwick, Rhode Island. During the course of preparing the presentence report in compliance with R.I. Gen. Laws 1956 § 12-19-6[2] and R.I. Super. R. Crim. P. 32,[3] the Probation and Parole Department made an extensive effort to contact family members of the deceased victims for the purpose of collecting data on the impact of the crime. The Probation and Parole Department accepted victim impact statements, which took the form of phone interviews, personal interviews, letters addressed to the Court, written statements, pictures, and booklets. In total, the presentence report included approximately 65 impact statements written by various individuals,[4] approximately 40-45 interview summaries, and approximately 35 notes indicating that no substantive impact had been received by a victim's family.[5] Many victims had a family member who both interviewed with the Probation and Parole Department and submitted written impact to the Probation and Parole Department, and many families had more than one family member submit impact on behalf of a deceased victim. Additionally, the Court received some statements after the submission of the presentence report, discussed infra.
The Court received a letter dated May 2, 2006 requesting access to all victim impact statements submitted to the Court prior to the sentencing of the Defendant. The letter was signed on behalf of the Petitioner. In response to the letter, the Court indicated that victim impact statements are part of the presentence report and confidential under Rhode Island law. The Petitioner then contacted the Court on May 4, 2006 and expressed the desire to expand the request to include all letters submitted directly to the Court related to the sentencing of the Defendant and requested a hearing. The Court granted a hearing on May 5, 2006. The Petitioner filed a miscellaneous petition on the morning of the hearing stating that the Petitioner holds a "fundamental right of access" to all sentencing letters submitted to the Court and stating that failure to make specific findings regarding the denial of access would violate the Petitioner's rights under the State and Federal Constitutional and common law rights.
 CONFIDENTIALITY OF PRESENTENCE REPORTS
The Rhode Island Supreme Court has interpreted Super. R. Crim. P. 32 to mandate strict confidentiality of presentence reports.State v. Cianci, 485 A.2d 565 (R.I. 1984); Ryan v. RomanCatholic Bishop of Providence, 787 A.2d 1191 (R.I. 2002). The blanket of confidentiality afforded to the presentence report shields the presentence report from all avenues used to access judicial records, except in extremely rare situations not at issue here. Although the text of Rule 32 does not explicitly reference the confidentially of presentence reports, the Supreme Court of Rhode Island has made such confidentiality abundantly clear, stating that:
 "courts that have considered this question have decided, in light of the history of the rule and the fear of a hindrance in the flow of information to the trial justice, that the rule imposes an airtight prohibition on disclosure of the reports to third persons. . . . [S]ince our own rule explicitly states that only the court, the Attorney General, the defendant's counsel, or the defendant himself shall have access to the report, we do not hesitate to declare the report confidential and certainly not to be disclosed to third persons." State v. Cianci, 485 A.2d 565, 566-67 (R.I. 1984); Ryan v. Roman Catholic Bishop of Providence, 787 A.2d 1191, 1194
(R.I. 2002).
Thus, only in the "extreme" and "rare" situation where a party shows an individualized need for disclosure of specific information will the Court release any part of the presentence report. Ryan v. Roman Catholic Bishop,787 A.2d at 1195.[6] The Supreme Court of Rhode Island has specifically expressed the willingness to impose sanctions for violations of the rule of confidentially as it applies to presentence reports.State v. Cianci, 485 A.2d at 567.
The Petitioner concedes that materials the Court received through the presentence report, solicited and received by the Probation Office, is confidential and cannot be released. In oral argument, the Petitioner referenced different categories of documents that it believes to be distinguishable from the presentence report, including: 1) letters partially read during the sentencing proceeding, 2) letters attached to the Defendant's sentencing memorandum, written by family and friends of the Defendant, and 3) letters submitted to the Court through the mail or through agents of the authors through avenues other than direct submission to the Probation and Parole Department. The Petitioner contends that if the Court deems material in the sentencing letters to be sensitive, it should apply the four-part inquiry found in Nixon v. Warner, 435 U.S. 589 (1978) andState v. Cianci, 496 A.2d 139 (R.I. 1995) in order to determine what parts of the sentencing letters are appropriate for release.
Letters Written by Family Members who Spoke at the SentencingProceeding
On May 8, 2006 through May 9, 2006, family members of the deceased victims gave oral victim impact statements during court proceedings, in accordance with the Rhode Island Victim's Bill of Rights, all which were open to the public.[7] R.I. Gen. Laws 1956 § 12-28-1, et seq. The oral statements did not necessarily track any previous statement submitted to the Court, although some family members chose to speak closely to their written submissions. On the morning of May 9, 2006, representatives from the Office of the Attorney General read approximately eighteen written statements or acknowledged certain deceased victims and their families, all in accordance with the requests of the family members. The statements read by the Office of the Attorney General were either submitted to the Victims Services Unit of the Attorney General or were forwarded by the Probation and Parole Department at the request of the family members. These letters were not read in full, but were excerpted to include only information relevant to the impact of the crime, as family members should have anticipated.
A family member's decision to speak in Court or have the Office of the Attorney General speak on their behalf does not affect the confidentiality of written submissions of the family member. The portions of the statements spoken or read aloud are part of public record and are available for public inspection. Undoubtedly, one of the reasons the legislation has provided for the mechanism of oral impact submission during court proceedings was to provide a means for publishing the victim impact of those family members who wish to make their feelings and lives open to the public. Families who chose a public route of impact submission may help demonstrate the seriousness of the crime and similar crimes. Such public submission may help the healing process of others experiencing similar losses. However, the election to speak in court or have the Attorney General read a statement in court does not mean the speaker or author abandoned the confidentiality of anything beyond what was said by the speaker or read with the approval of the author.
Letters Submitted on Behalf of the Defendant
The Defense counsel submitted approximately 80 letters to the Court on April 26, 2005. The presentence report was submitted to the Court on the Friday afternoon of April 28, 2006. Although approximately 30 of the Defendant's letters were included in the presentence report, 50 of the letters were delivered to the Probation and Parole Department after the presentence report was submitted to the Court. The defense attorney's act of submitting the letters[8] in advance of the presentence report, so that the Court would have ample time to consider the letters, does not change the status of the letters. The letters were written for the purpose of inclusion in the presentence report. The content of the letters indicates that the authors of those letters expected their utmost personal and intimate views on the crime and the nature of the relationship with the defendant to be kept confidential. Further, the reference to a handful of the letters in the defendant's sentence memorandum and the inclusion of copies of the letters submitted as an exhibit of the memorandum for the Court's consideration does not mean that the letters themselves must be public records. The state, defense, and judge often broadly reference the presentence report or specific non-identifying examples therein. If the Defendant solicited the letters for delivery to the Probation and Parole Office, as it appears to be the case here,[9] they are inherently part of the presentence report, and the author's expectation of privacy resulting from the participation in the presentence report preparation should be honored.[10]
Forwarded Letters Incorporated in the Presentence Report andLetters Received After Submission of the Presentence Report
The Court also forwarded approximately 15-20 letters by family members and one letter written by a member of the general public to the Probation and Parole Department to assist in this widespread effort.[11] These letters were later all included in the presentence report.[12] The Probation and Parole Department indicated that many of the 15-20 letters had already been submitted directly to the Probation and Parole Department. It appears that some family members simply forwarded their statement directly to the Court after submitting the same statement to the Probation and Parole Department. It is reasonable to deduce that the act of forwarding the statements directly to the Court was done out of an abundance of caution, so that the family members could be reassured that the statements would indeed reach the Court.[13]
Additionally, the Court directly received statements subsequent to the submission of the presentence report. Upon agreement with the Probation and Parole Department, any impact received during the twelve day interim between the submission of the presentence report and the final sentencing of the Defendant would be copied by the Court for the Defendant and the State, for purposes of convenience.[14] The Court indeed provided the Defendant and the State with approximately 13 additional pieces of victim impact statements and letters from community members including: five letters directly submitted to the Court on behalf of members of the public, two statements forwarded by the Rhode Island Victims' Advocacy and Support Center, and four letters and a picture forwarded through the Victim Services Unit of the Attorney General.[15]
A document directly received by the Court, without necessarily being solicited by the Probation and Parole Department and filtered into the presentence report is arguably distinct from those documents directly submitted to the Probation and Parole Department. A document's incorporation into the presentence report would clearly not prohibit its release from those who have come into possession of the document by means other than the process of compiling and inspecting the presentence report.[16] The fact that the Court forwarded letters to the Probation and Parole Office for inclusion in the presentence report gives the letters no greater confidentiality than if it had chosen not to do so. The only documents requested by the Petitioner not clearly technically part of the presentence report are letters sent by victims and the public directly to the Judge However, this Court believes that these letters should also maintain the same confidentiality as the presentence report because of similar policy considerations.
Sentencing Letters Delivered to the Judge are Akin to theMaterials in the Presentence Report
Even if some of the materials identified by the Petitioner cannot technically be considered part of the presentence report, the Court considers all the materials requested by the Petitioner to be akin to the presentence report, and thus protected by the same confidentiality. Applying the four-part test fashioned for creating narrow protective orders, which the Petitioner urges the Court to utilize, would not be sound in the instant case.
Policy reasons behind maintaining the confidentiality of correspondence sent to a judge is best understood by comparing the Rhode Island Supreme Court cases of State v. Cianci,485 A.2d 565 (R.I. 1984) (hereinafter Cianci I) and State v.Cianci, 496 A.2d 139 (R.I. 1985) (herein after Cianci II). InCianci I, the Rhode Island Supreme Court created a blanket confidentiality protection for the class of documents compiled by the Probation and Parole Department for purposes of assisting the Judge with the task of fashioning an appropriate sentence for a criminal defendant. 485 A.2d 565 (R.I. 1984). The presentence report confidentiality covers both sensitive and non-sensitive materials in the report, and mandates denial of access unless the party seeking access proves specific narrow circumstances exist. In Cianci II, the Rhode Island Supreme Court did not allow blanket confidentiality for filed discovery materials. Instead, the Supreme Court mandated that when fashioning a protective order, the court must ensure that the:
 "protective order (1) must be narrowly tailored to serve the interests sought to be protected, (2) must be the only reasonable alternative, (3) must permit access to those parts of the record not deemed sensitive, and (4) must be accompanied by the trial justice's specific finding explaining the necessity for the order." State v. Cianci, 496 A.2d 139, 144
(R.I. 1985)).
The different treatment of the materials in Cianci I andCianci II is due to the underlying policies for the confidentiality. In Cianci I the concern was that releasing any part of the presentence report would hinder the flow of information to the trial justice, as individuals would be afraid to participate in a full and honest fashion in the process of presentence information gathering if the contents of their participation could in any way be released to the public. CianciI, 485 A.2d 565, 566-567 (R.I. 1984). Creating a four-part inquiry allowing limited release, as done in Cianci II, was not appropriate in Cianci I as the only way to meet the concern of protecting the free flow of information to the sentencing authority was by mandating complete confidentiality. In CianciII, the interest at stake was the defendant's right to a fair trial, which can be threatened by release of certain information often in discovery materials, such as hearsay evidence. CianciII, 496 A.2d 139, 144. Unlike statements voluntarily submitted by the community or victims of crimes, information gathered in response to discovery requests is mandatory and thus is not subject to the danger of chilling submission of information. Specific sensitive information contained in discovery material can be protected from public release, but a blanket confidential protection is not necessary based on the competing interests.
The interest in maintaining the confidentiality of sentencing letters received directly by the Judge is the same as the interest in keeping the presentence report confidential; they both warrant blanket protection from public access so as to avoid chilling the honest and open avenues for speech. Letters from family members of victims contain private statements of how their physical, psychological, and emotional conditions have been affected by the loss of a loved one or friend. The letters often stated intimate and detailed descriptions of the loved ones that were lost in the fire. The information contained in the letters was of an identical nature to letters sent solely to the Probation and Parole Department. Although the Court can conceptually separate letters by family members and the public solely sent to the Court, and not the Probation Parole Department, the distinction is without a difference. It is clear from the highly sensitive and personal material contained in the letters that the authors did not believe that the letters would be released for public consumption. This expectation is completely reasonable, as there is no history of judicial release of personal correspondence to the press.
Even letters written by individuals that did not appear to be personally related to deceased victims often wrote intimate details of their response to the tragedy and impassioned views of the crime. The Court is certain that if members of the public believed that portions of the letters were to be made public, it would chill the honest and valuable input from the community and effectively confuse and inhibit the flow of information to the Court through all avenues of information gathering. The Petitioner has given no reason to obtain the documents, besides printing the letters for public consumption.
The Court is mindful that only a few other jurisdictions have considered the issue of releasing sentencing letters.[17]
In United States v. Lawrence, 167 F. Supp. 2d 504 (N.D.N.Y. 2001), a New York District Court held that the first amendment right of access did not extend to letters mailed directly to the Judge prior to the sentencing of a criminal defendant. The following excerpt is particularly in line with the Court's reasoning in this case:
 "While the sentencing process has traditionally been open to the public, the documents involved in that process have not, in the Second Circuit are not, traditionally available to the public. The letters submitted by private citizen directly to the Court clearly evinced an expectation of privacy and confidentiality. If letters such as these were routinely disclosed and made part of the public record, it may have a chilling effect and discourage the valuable input as to the character of the defendant and other relevant sentencing concerns that would be garnered from the community during the sentencing process. Thus, the rationales for keeping presentence reports confidential are equally applicable here. The privacy expectations of citizens and the benefit of honest, uninhibited commentary on sentencing issues far outweigh the need for public access to these letters. . . . Thus, the Court concludes that, after balancing the interest of the parties, there is no need to violate the writers' legitimate expectation of confidentiality when the media and public were thoroughly informed at the sentencing hearing of the nature and quantity of the letters." Id. at 508 (citation omitted).
For all the above-mentioned reasons, the Court finds that the confidentiality extended to sentencing materials submitted directly to Probation and Parole Department extends to sentencing letters submitted directly to Judges.
The Court notes that if the four-part test did apply to these letters, complete confidentiality would be the only alternative and would be narrowly tailored to the compelling interest not to chill victim and community input into the sentencing decision, and any material released would threaten the free flow of information.
 AVENUES OF ACCESS TO JUDICIAL DOCUMENTS
The Court further holds that even if the confidentially of presentence reports did not extend to reach certain sentencing letters, the avenues of access to judicial documents do not reach the documents in question. There are three avenues in which the media can obtain access to judicial records in criminal cases: by claiming a constitutional right of access, by asserting the common law presumption of access, and through the means created in the Access to Public Records Act (APRA), R.I. Gen. laws 1956 §38-2-2, et seq. The Court continues the opinion to dispel the notion that Courts are required to hold hearings and state specific reasons for denying any media request to access any and all materials mailed to individual judges.
Nature of the Right and Presumption of Access to JudicialRecords in Criminal Cases
The Petitioner raises the issue of whether there is a constitutional right to access unfiled letters delivered to the Court for purposes of fashioning a sentence for a criminal defendant. "[T]he First Amendment generally grants the press no right to information about a trial superior to that of the general public [and] * * * `a reporter's constitutional rights are no greater than those of any other member of the public.'"Providence Journal Company v. Rodgers, 711 A.2d 1131, 1135
(R.I. 1998) (quoting Nixon v. Warner Communications, Inc.,435 U.S. 589 (1978)). The Sixth Amendment guarantee of a public trial "is satisfied by the opportunity of members of the public and the press to attend the trial and report what they have observed." Rodgers, 711 A.2d at 1135 (quoting Nixon,435 U.S. at 610).
In State v. Cianci II, 496 A.2d 139 (R.I. 1985), discussedsupra, the Court recognized the "current trend toward the expansion of First Amendment rights," and reversed the decision of the trial court to seal all discovery materials to eventually be filed with the Court on that specific case.[18] Id. at 145. The Court applied a four-part inquiry that must be made by a trial court before closure of the public's access to a trial or discovery obtained therein and filed with the Court. Id. at 144. Although the Cianci II Court recognized that there is no requirement that discovery be filed, there is no indication from the language of the case that there is a right to access non-filed discovery materials. The protective order in the case only covered discovery that was filed in the Court.
In In re Access to Certain Records of Rhode Island AdvisoryCommittee on the Code of Judicial Conduct, 637 A.2d 1063 (R.I. 1994), the Rhode Island Supreme Court expounded upon the nature of the common-law right of access judicial records. The Court stated:
 "The right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purpose. . . . It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. * * * The decision as to access is one left to the sound discretion of the court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id. at 1063 (quoting Nixon, 435 U.S. at 598-99).
The In re Access to Certain Records Court went on to find that the common law access applied to advisory opinions and their supporting documents issued by the Rhode Island Advisory Committee on the Canons of Judicial Ethics. After applying a balancing test of the interests of public disclosure and confidentiality of the inquiring officer, the Court granted access to future unredacted copies of the advisory opinions and supporting documents and redacted versions of the materials issued before the In re Access to Certain Records decision.
In the Rhode Island Supreme Court case Providence JournalCompany v. Rodgers, 711 A.2d 1131 (R.I. 1998), the Court dismissed the Petitioner's contention that there was a constitutional right to access judicial documents and records, holding that neither the first amendment nor the sixth amendment applied to documents related to criminal proceedings. Similar to the petition in this case, the Journal filed a petition in theRodgers case alleging that the denial of access to certain records violated its rights under the United States Constitution and the Rhode Island Constitution. Id. at 1133. The Rodgers Court stated that because a request for documents found in the public records did not relate to the right to attend trials, there was no constitutional basis for the Petitioner's right to access the documents. Id. at 1135. The Rodgers Court then went on to state that "although the right of access to records or documents in criminal cases is of common-law origin, the Nixon Court made clear that a curtailment of access to records or documents in such cases should be evaluated by a balancing test identical to that performed in the case of government curtailment of a constitutional right." Rodgers, 711 A.2d 1131, 1136
(citing Nixon v. Warner Communications, 435 U.S. 589, 602
(1978)). The Rodgers Court applied the four-part inquiry,supra, to determine if there was indeed a common-law right of access to redacted court records which contained the identity of a victim of child molestation. The Court found that releasing redacted court records was consistent with the statute that mandated confidentiality of the documents, since the intent of the legislature was to protect the identity of the victims.
Rodgers and Cianci clarified that when either the common-law or constitutional right of access applies to documents related to criminal proceedings, the four part inquiry, supra,
should be implemented to minimize the amount of inaccessible material. What neither case addresses is how to determine what documents related to criminal proceedings are subject to the common law and constitutional rights of access. Both the Rodgers and Cianci cases were applied to "documents filed in court."[19]
First Amendment Right to Access Criminal Proceedings Does NotSupport the Access to Sentencing Letters
Courts across the nation, including the District Court for the District of Rhode Island, apply a two-prong test derived fromPress-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986), to determine if the constitutional right of access applies to the judicial document requested.[20] The first prong is that the document must be of the type which is historically open to the public.[21] See Press-Enterprise Co. v. SuperiorCourt, 478 U.S. 1, 8 (1986); United States v. Cianci,175 F. Supp. 2d 194, 200 (D.R.I. 2001). Unlike pretrial discovery materials, which historically are often filed, there is no history of individual judges filing or otherwise releasing letters sent to them unless the letters directly result in the Court treating the letters as a court filings. The Court can uncover no history of forcing individual judges to release mail commenting on cases in which they preside, either locally or on a national level. See United States v. Kushner,349 F. Supp. 2d 892, 904 (D.N.J. 2005) ("[I]nsofar as sentencing letters have ever been disclosed to the public, that disclosure was certainly not rooted in Anglo-American tradition."). Thus, even if there was a constitutional right to access unfiled judicial documents related to criminal cases, sentencing letters would not be covered by that right.
Common Law Right of Access Does Not Extend to Sentencing LettersMailed to the Court
The right to access and inspect judicial records or documents in criminal cases in Rhode Island has its roots in the common law, and the same balancing test is used when curtailing the constitutional right of access to criminal proceedings.Providence Journal Company v. Rodgers, 711 A.2d 1131, 1136
(R.I. 1998). After carefully considering the relevant case law, the Court finds that the balancing test the Petitioner relies on does not apply to the documents the Petitioner seeks. None of the letters or documents the Petitioner seeks are subject to the common law right of access because sending a letter through postal mail is not equated with filing a document in the Court Clerk's Office. In explaining the Supreme Court's reasoning for allowing access to criminal court files, the Rhode Island Supreme Court has stated that:
 "`by placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by reporting of the true contents to the records by the media.'" Providence Journal v. Rodgers, 711 A.2d 1131, 1136 (R.I. 1998) (quoting Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 495-496 (1975)).
This statement supports the suggestion that judicial records are those which have been placed in the public domain on official court records or documents which are substantially related to the conclusions in those records. A judge's mail is not placed on any court record. As legal commentators have observed, "[t]here is no presumption of public access to documents that are never filed with the court." 1 Moore's Federal Practice § 5.34[2][b] at 5-69 (3d. ed. 2006).
Although the common-law presumption of access is consistent throughout the nation, there is no uniform method among the circuits or states to determine to what judicial documents the presumption applies, how strong the presumption is, and what interests overcome the presumption. The First Circuit has held that the common law presumption extends to "materials on which a court relies in determining the litigants' substantive rights. Those documents which play no role in the adjudication process, however, such as those used only in discovery, lie beyond reach."Federal Trade Commission v. Standard Financial ManagementCorp., 830 F.2d 404, 408 (1st Cir. 1987) (hereinafter FTC). The FTC court did "not reach — and express no opinion upon — the thornier question of the press's access, if any, to court records not otherwise made publicly available." FTC, at 408, n. 3.
Letters a judge receives from victims and the public are within this thornier question of documents not otherwise publicly available. This Court is not in the position to fashion a bright line test or rule that would determine what, if any, common law access extends to non-filed documents received by individual judges in their official capacities. Sentencing letters are remotely related to any official document or decision of the Court. Judges in Rhode Island utilize vast materials when considering a fair sentence for a criminal defendant. Like letters solely submitted to the Probation and Parole Department, the Court carefully read all letters submitted to it, regardless of the method of submission. However, no one letter or group of letters could be identified as substantially forming the basis of the sentencing decision. Rather, the depth and volume of impact of the crime was acknowledged by the Court.
On a practical level, judges receive all sorts of mail at their offices on a day-to-day basis. Criminal defendants, victims, court employees, and members of public submit letters, e-mails, cards, and other objects for various reasons containing various pieces of information. There is no requirement in Rhode Island to keep these documents or announce receipt of these documents. It would be extremely time consuming if all members of the judiciary were required to come up with some sort of inventory, filing, and storage system for every piece of mail it received, so that it could later be provided to the press upon request. Authors of sentencing letters are welcome to send copies of documents previously submitted to the Court, or any other document stating their opinion about the sentence, to members of the media for public consumption, just as any other individual in the United States of America.
Sentencing Letters Not Public Records Under the APRA
The Petitioner did not mention the Rhode Island Access to Public Records Act (APRA) in the May 5th hearing, but did make reference to the Act in the course of dealings before the said hearing.[22] The avowed purpose of the APRA is "to facilitate public access to governmental records which pertain to the policy making functions of public bodies and/or are relevant to the public health, safety, and welfare." In re New Eng. GasCo., 842 A.2d 545 (R.I. 2004). "Because the Rhode Island Access to Public Records Act (APRA), R.I. Gen. Laws ch. 2, title 38 (1956), mirrors the Freedom of Information Act (FOIA),5 U.S.C.S § 552, it is appropriate to look to federal case law interpreting the FOIA to assist in the interpretation of the APRA."Providence Journal Co. v. Convention Ctr. Auth., 774 A.2d 40,46 (R.I. 2001).
The first step in applying the APRA is to determine whether or not the document in question is a public record, as "there is no public interest to be weighed in disclosure of nonpublic records." Direct Action for Rights Equal v. Gannon,713 A.2d 218 (R.I. 1998) (quoting Providence Journal Co. v. Kane,577 A.2d 661, 663 (R.I. 1989)). Section 38-2-2(4)(i) of the APRA provides a broad definition of public records, as all "documents, papers, letters, . . . or other material . . . made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." The term "agency" includes "any . . . judicial . . . body of the state, . . . or any . . . person . . . acting on behalf of and/or in place of any public agency." R.I. Gen. Laws § 38-2-2(1). However, subsection (T) explains that judicial bodies are included in the definition only in respect to their administrative functions. Section 38-2-2(4)(i)(T). Administrative function is not defined in the Access to Public Records Act. Black's Law Dictionary defines "administration" as the "management or performance of the executive duties of a government, institution or business." Black's LawDictionary 44 (7th ed. 1999). Applying the APRA to the judiciary only in their executive capacity is consistent with federal interpretations of the FOIA.[23] The FOIA specifically excludes courts of the United States from its definition of agency. 5 USCS § 551(1)(B).[24] It is apparent the APRA would apply to those carrying out policies and rules in the Clerk's office in the course of managing documents filed with the Court. It is not designed to apply to individual judges reading their office mail.[25]
Thus, any reliance the Petitioner originally had regarding the applicability of the APRA to the request at hand is misplaced.
 CONCLUSION
The Court holds that even if the avenues of access were to reach the sentencing letters, the strong reasons for confidentiality of presentence reports and documents akin to presentence reports would clearly and unequivocally outweigh the release of any such letters because of the chilling effect such release would have on future honest communication. The Court further holds that if the presentence confidentiality did not apply to the letters, none of the avenues of access to judicial records would extend to reach the requested letters.
The Petition is therefore DENIED.
[1] In this context, the right of "access" means the right to inspect, copy, and publish documents.
[2] Section 12-19-6 states:
 "Presentence reports — Whenever an accused shall be found guilty after trial or shall plead guilty or nolo contendere on any charge for which a sentence of more than one year may be imposed, the court shall, before imposing sentence, have presented to it by the administrator of probation and parole a presentence report. All local and state police agencies shall furnish to the administrator of probation and parole any criminal records that the administrator may request."
[3] Rhode Island Super. Ct. R. Crim. P. 32(c) states, in relevant part:
(c) Presentence Investigation.
 (1) When Made. In every case in which a sentence of imprisonment for more than one year may be imposed, except where the prescribed punishment is death or a mandatory term of life imprisonment, the administrator of probation and parole shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation. . . .
 (2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about the defendant's characteristics, the defendant's financial condition and the circumstances affecting the defendant's behavior as may be helpful in imposing or deferring sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.
 (3) Disclosure. Before imposing sentence the court shall make the presentence report available to the Attorney General to aid him or her in making a recommendation to the court concerning the sentence to be imposed. The court shall also make the report available for inspection to counsel for the defendant, or to the defendant himself or herself if the defendant is not represented by counsel, and afford an opportunity to the defense to comment thereon. . . .
[4] Included in this number are letters, statements, poems, and other written forms of victim impact. Three booklets were compiled on behalf of three different deceased victims by their family, two of which contained over twenty letters written by friends and family not included in the approximate total of impact statements. The booklets also included a wide array of information, such as SAT scores, work certificates, and funeral guest logs.
[5] These notes detailed the efforts undertaken to reach the various individuals related to the deceased victim.
[6] In Ryan v. Roman Catholic Bishop, the plaintiff's civil action prayed for damages for a sexual assault committed by a criminally-convicted priest; statements made by the defendant priest in his presentence report showed the possibility of the Church's knowledge of the crime. The plaintiff showed that it was necessary to obtain statements by the deceased defendant in the presentence report, as it was clear that it might be impossible to otherwise obtain the evidence. 787 A.2d 1191 (R.I. 2002). The Petitioner in this case does not claim that such extenuating circumstances exist.
[7] All in all, thirty speakers were scheduled to give such allocution.
[8] The fact that the authors entrusted the letters with an attorney to submit to the Probation and Parole Office in lieu of directly mailing the letters to the office does not alter the reasonable expectations of the authors and the intent of the submission. Attorneys often act as agents of individuals.
[9] Counsel averred during the hearing that all letters submitted on behalf of the Defendant were intended to be a portion of the presentence report.
[10] This is not to say that the Defense attorney could not solicit letters intended for publication or inclusion in the public records.
[11] The Court forwarded all such letters in the spirit of the requirement of Rule 32, which strictly requires the Defendant and State be allowed to inspect the presentence report, so that the Court does not rely on incorrect information when sentencing a Defendant. Because the Court anticipated a number of direct mailings from both family members and the general public due to the magnitude and interest involved in the Station fire cases, implementing a procedure such as this alleviated any concerns the Defendant might have regarding the accuracy of the letters.
[12] The Court is also cognizant that a few statements may have been included in the presentence report through the forwarding efforts of individuals such as the Victim's Services Unit of the Attorney General's Office, victim's advocates, and civil attorneys. The Court considers victim impact statements forwarded to Probation and Parole Department through victim advocates, attorneys, or the Victim Services Unit of the Attorney General's office to be considered to have the same confidentiality as those sent to the Probation Department. Such individuals are simply acting as agents of the authors.
[13] All but the most recent submissions the Probation and Parole Department had received had already been forwarded to the Court by the Probation and Parole Department. Because of the breadth of the submissions, and the Court's desire to have sufficient time to read the presentence report, the Probation and Parole Department sent the Court weekly updates which included any new submissions or interview notes received by the Probation and Parole Department during that week. All these statements appeared in the victim impact section of the final version of the presentence report.
[14] The Defendant was sentenced on May 10, 2006.
[15] One letter was also forwarded by Probation and Parole Department. Clearly this letter would unquestionably be part of the presentence report, as it was received in the traditional method of solicitation and acceptance of the Probation and Parole Department.
[16] For example, if a friend of the Defendant submitted a letter to the Probation and Parole Department for inclusion in the presentence report, and retained a copy of the letter in his or her own file, the author could subsequently release the copy of the letter to whomever her or she saw fit.
[17] See United States v. Gotti, 322 F. Supp. 2d 230
(E.D.N.Y.) (creating a procedure for release of letters where the letters are authored by a public official or the Court believes that the letters significantly impacted the sentence and the government attorney, after reviewing the letters in camera,
believes that parts of the letters should be disclosed); UnitedStates v. Lawrence, 167 F. Supp. 2d 504, 509 (denying release of sentencing letters which did not play a significant role in the exercise of judicial power), United States v. Kushner,349 F. Supp. 892 (D.N.J. 2005) (common law presumption attaching to letters attached or referenced in sentencing memoranda, letters explicitly relied upon by the Court, letters submitted by former or current public officials and affording only a weak or non-existing presumption of access to all other sentencing letters).
[18] Although the Petitioner in Cianci II also raised the common law right of access, the court did not discuss this avenue of access separately, and cited to cases that held the right to attend proceedings did not extend to pretrial proceedings and cases which stated the common law right of access was best left to the discretion of the trial court. Id. at 145, n. 2.
[19] The briefs filed in the case of Cianci II clearly indicate that the discovery documents were "filed in court." Brief for the Petitioner, State v. Cianci, No. 84-31 (July 10, 1984). The documents in question in Rodgers were documents filed in the Court Clerk's office.
[20] The Supreme Court has not yet decided whether theFirst Amendment confers the right of access to documents filed in a criminal case. United States v. Cianci, 175 F. Supp. 2d 194
(D.R.I. 2001). Press-Enterprise Co. v. Superior Court, used by many Courts to find a right of access to judicial documents, did not pertain to access to judicial records, but rather held that there was a right to attend state court preliminary hearings.Id. at 478 U.S. 1, 7-9 (1986).
[21] This test is sometimes referred to as the "experience and logic" test. See United States v. Gotti, 322 F. Supp. 2d 230,242 (E.D.N.Y. 2004). The second prong of the test is generally whether the public's review of the documents is significant to ensure the proper functioning of the particular process in question. 1 Moore's Federal Practice § 5.34[1][d] at 5-69 (3d ed. 2006).
[22] The Petitioner mentioned the Freedom of Information Act, which the APRA is based, and also initially mentioned the ten day time limitation in which denial or access must be granted. R.I. Gen. Laws 1956 § 38-2-7.
[23] Indeed, this is the view that the petitioner asserted inIn re Access to Certain Records of Rhode Island AdvisoryCommittee on the Code of Judicial Conduct, 637 A.2d 1063 (R.I. 1994). In that request, the Journal sought records of advisory opinions issued by the Rhode Island Advisory Committee on the Canons of Judicial Ethics. The Rhode Island Bar Association asserted § 38-2-2 excluded records of judicial bodies from the definition of public documents except records produced by those bodies in the administrative function. The Journal argued that the term "administrative," although not defined in the APRA, refers to the exercise of executive authority, and that because the Advisory Committee operated as an arm of the Supreme Court in furtherance of the Court's overall disciplinary authority over judges, the records related the court's executive function. Id.
at 1065 (case decided on common law access grounds); Brief of the Petitioner, In re Access to Certain Records, M.P. No. 93-370, at 7-8 (Sept. 10, 1993).
[24] The FOIA only includes any "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of Government (including the Executive Office of the President), or any independent regulatory agency." 5 USCS § 552(f).
[25] Interpreting mail received by the public and victims as being outside the administrative function of the court is consistent with the fact that there is no specific exemption for these documents as applied to judges, but there is an exemption for correspondence sent to elected officials in their official capacity. § 32-2-2(4)(i)(M).